NICHOLS, Senior Circuit Judge:
 

 This case is before us on Samuel’s appeal from a judgment of the United States District Court, Northern District of Georgia, which affirms the bankruptcy court’s determination of dischargeability of Baitcher’s debt to Samuel “under all subsections of 11 U.S.C. § 523.” This court is of the opinion that the judgment is final for our jurisdictional purposes despite what is said to be pendency of proceedings under 11 U.S.C. § 727 to set aside Baitcher’s discharge on statutory grounds. We hold that there are issues of fact which should have been tried, and it was error to discharge Baitcher by summary judgment in advance of such trial. Therefore, we vacate and remand.
 

 Facts
 

 In 1974 Barbara Baitcher and her former husband, Daniel Baitcher, owned and controlled an Atlanta restaurant, The Flame, Inc. He was indicted for an offense unrelated to that business, but the liquor license was suspended according to official policy. The business became unable to pay its debts and Barbara, as corporate secretary, executed and filed a voluntary petition in bankruptcy. She had, up to that time, managed the restaurant as Mr. Baitcher had business interests elsewhere that preempted his attention. She spent 12 to 15 hours there daily and had been accustomed to procure, among other things, necessary insurance. They were not allowed to remain as debtors in possession and the bankruptcy court appointed receivers who were ostensibly and legally in charge. She continued to work on the premises for long hours and made many managerial decisions. However, neither she nor the receivers renewed the workmen’s compensation insurance required by Georgia law, and while it was lapsed, a waiter, appellant Samuel, suffered a fall with resultant injury. The State Compensation Board made an award to Samuel, to be paid by the employer plus a penalty, as state law required, if it had failed to obtain proper coverage, but the bankruptcy prevented recovery from that source. In 1976 Samuel sued both Baitchers, personally, for the award and penalty, but Daniel Baitcher, though acquitted of the criminal charge, was not in business thereafter, and judgment proof as seems to be assumed.
 

 Barbara Baitcher being greatly afflicted by suits and attachments deriving from The Flame failure, but filed against her personally, on October 2, 1979, petitioned for her individual discharge in bankruptcy. She failed to list Samuel among her creditors, though she was, through counsel, actively defending against his suit. At about that time, strictly, the day before, the state trial court dismissed Samuel’s suit against the Baitchers. The ground of dismissal was that the state compensation law provided, according to its terms, the sole and only remedies for the industrial injuries it covered, and it provided for the employer’s liability plus penalty in case it failed to obtain legally required insurance, but failed to deal with the case of alleged liability of any other and further persons.
 

 In 1980 Barbara Baitcher obtained her discharge, but of course it did not discharge Samuel’s claim, which she had failed to list, and he had been given no actual notice of the new bankruptcy proceeding. It had been a “no assets” bankruptcy in which all the creditors got nothing.
 

 Samuel was unsuccessful in an intermediate appeal in his state case, but in February 1981, obtained a reversal.
 
 Samuel v. Baitcher,
 
 247 Ga. 71, 274 S.E.2d 327. The Georgia Supreme Court took the view that as corporate officers, the Baitchers were responsible for procuring the insurance and had failed in their duty. It repeatedly calls them “agents” saying:
 

 The issue here can be stated thusly: Can an agent who failed to perform his
 
 *1531
 
 duty to procure workers’ compensation for an insolvent employer rely upon the exclusive remedy bar in defending a suit for an amount equal to the award assessed against the employer?
 

 !}: * * *
 
 *
 

 *
 
 * * Had the employer’s agents (the Baitchers) carried out their duties under the Act by providing workers’ compensation insurance coverage, the award would have been collected.
 

 It is to be noted the opinion nowhere attempts to identify who the “employer” was. Whatever or whoever he was, the Baitchers were his agents. It is stated that the court had before it an admission on discovery that the Baitchers were “debtors in possession,” but it is clear the court did not rely on it, for then they would have been principals, not agents.
 

 Samuel now obtained a money judgment by the state trial court. Then, and only then, Barbara Baitcher (called Baitcher now as Daniel is out of the case), moved to reopen her bankruptcy, added Samuel’s name to the list of creditors, and obtained a new discharge applicable to him.
 

 Proceedings Below
 

 Oyer Samuel’s objections, the bankruptcy judge allowed Baitcher to reopen the proceedings and to add Samuel and his claim. His position was that Samuel was not prevented from “timely filing of a proof of claim” because he was not prejudiced. He was being allowed to file an adversary complaint to litigate even now the issue of dischargeability. 11 U.S.C. § 523(a)(3). As a matter of fact, there never had been a time to file a proof of claim, because there were no assets. We attach the relevant parts of section 523(a) in the section of this opinion that follows.
 

 Upon cross-motions for summary judgment, the bankruptcy judge further rejected the several statutory grounds Samuel asserted to support his complaint of nondis-chargeability. Samuel addressed these issues under protest, as he asserted the court lacked jurisdiction to consider them. Though Baitcher had a legal duty to obtain the insurance, she was not a fiduciary in the sense of section 523(a)(4). Also, since the appointment of the receivers, she -had ceased to be a fiduciary if ever she had been one. It was no longer in her control to pay the insurance. There was no evidence she knew there was no insurance and therefore an intent to deceive Samuel could not be imputed. Section 523(a)(2). As regards the exception for a claim based on willful and malicious injury, section 523(a)(6), the receivers did similar duty in shielding her as to that.
 

 Summary judgment as to the discharge-ability complaint was therefore granted on Baitcher’s motion and denied on Samuel’s, 36 B.R. 588. Samuel’s complaint was dismissed, and a discharge was granted to Baitcher, including Samuel’s claim.
 

 On the appeal to the district court, the district judge in general followed the same line of reasoning as the bankruptcy judge. At first blush, he had thought the original nonlisting of Samuel’s claim had prevented his timely filing of his proof of claim, but on being reminded this had been a no-asset bankruptcy, changed his mind. His final position was, in effect, that there was no such thing as a time too late to file a timely proof of claim, if no deadline for filing such proof was ever set, because there were no assets to distribute to the creditors. There was no such thing as a time too late for filing a dischargeability complaint if, as was the case, such a complaint could now be filed after proper scheduling and notice. It reads as if this would be a
 
 per se
 
 rule in his court. Prejudice to the creditor would be irrelevant, at least whenever he has the opportunity to defeat an amendment to secure discharge of his claim by a complaint that will be received. The court also added a discussion of the
 
 res judicata
 
 or collateral estoppel effect of the state court decision. He was of the view it was entitled to no such effect because founded on the error that the Baitchers were debtors in possession on the date of Samuel’s accident, contrary to the bankruptcy court’s own records, and moreover, the Georgia discovery statute has a clause that discovery admissions are not evidence in other proceedings.
 

 
 *1532
 

 Applicable Statute
 

 § 523. Exceptions to discharge
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 (1)for a tax or a customs duty—
 

 (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title, whether or not a claim for such tax was filed or allowed;
 

 (B) with respect to which a return, if required—
 

 (i) was not filed; or
 

 (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
 

 (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;
 

 (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
 

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition; or
 

 (B) use of a statement in writing—
 

 (i) that is materially false;
 

 (ii) respecting the debtor’s or an insider’s financial condition;
 

 (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
 

 (iv) that the debtor caused to be made or published with intent to deceive;
 

 (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor whom such debt is owed, in time to permit—
 

 (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
 

 (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;
 

 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
 

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—
 

 (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise * * *; or
 

 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;
 

 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
 

 Discussion
 

 I
 

 Appellant Samuel urges reversal on the ground that his motion for summary judgment should have been granted. He interprets the statutory word “timely” as meaning timely under the bankruptcy rules in the case of a bankrupt with assets. In his view, even in a no-asset ease, when the time for a proof of claim never arises, he is entitled to notice, and in the absence of notice, the debt is not discharged. He was prevented from participating in the bankruptcy in its early phase, and had he done so, he might have discovered some effective means of protecting his interests, that in his ignorance of the proceeding, he lost. He cites
 
 Moureau v. Leaseamatic, Inc.,
 
 
 *1533
 
 542 F.2d 251 (5th Cir.1976) in which the predecessor of this court held that under the old law, whose language was not exactly the same as the present law, the bankruptcy judge rightly denied a discharge when a debt had not been scheduled. This denial was after notice and hearing, not upon summary judgment. Absence of assets is not mentioned, but the creditor was informed of the proceeding late but soon enough, though barely, for filing a proof of claim.
 

 Baitcher cites a decision under the new law,
 
 Matter of Stark,
 
 717 F.2d 322 (7th Cir.1983). This was a no-asset case and the debtor was allowed to reopen to add the omitted debt on the ground that the time for filing a claim had not been set and the creditor could still file a claim if assets were ever discovered, it was noted, however, that there was “no evidence of fraud or intentional design.” 717 F.2d at 324. The court referred to the principles of equity. The creditor was a hospital and the nonlisting explained as due to the debtor believing the debt to the hospital would be covered by insurance. As we said in another bankruptcy context, “[i]t is well accepted that the bankruptcy court is guided by the principles of equity, and that the court will act to assure that ‘fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.’ ”
 
 In re International Horizons, Inc.,
 
 751 F.2d 1213, 1216 (11th Cir.1985). Yet by Baitcher’s interpretation, the statutory word “timely” means a date preceding a date that in a no-asset bankruptcy never occurs,
 
 i.e.,
 
 a notice is as a matter of law never untimely unless and until assets are discovered. By Samuel’s view, omission by mere inadvertence is fatal to dischargeability, even if harmless. This, too, is an inequitable position.
 

 Under the old law construed in
 
 Moureau v. Leaseamatic, Inc., supra,
 
 the debts were not discharged if they had “ * * * not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt * * *.” 542 F.2d at 252. Under the new law construed in
 
 Matter of Stark,
 
 a debt is not discharged if not “scheduled in time to permit timely filing of a proof of claim * * 717 F.2d at 323 n. 1. When the mind labors to determine the true intent of a change in statutory language, the mere fact that a change is made may be taken to signal a change in meaning, or else the lawyer’s penchant to stick with tried and tested language would have prevailed. On the other hand, perusal of the old and new language does not readily reveal the nature of the change intended, if any, nor do the parties cite anything that throws a clear light. The Seventh Circuit panel cites cases under the old law though it is construing the new one. The panel in
 
 Moureau v. Leaseamatic, Inc.
 
 cited the Supreme Court case,
 
 Birkett v. Columbia Bank,
 
 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904), which does indeed come pretty close to announcing a
 
 per se
 
 rule that failure to schedule a known debt results in that debt not being discharged even if the creditor had actual notice, unless the actual notice is received soon enough to enable the creditor to enjoy an equal opportunity with other creditors to participate in administration of the estate, not just to file a proof of claim.
 

 The bankruptcy judge relied on absence of actual prejudice to Samuel, but he did not perceive prejudice, as the Supreme Court did, and as Samuel does, in inability to participate in the proceeding as a timely-listed creditor might have done. The reasoning of the district judge was different insofar as to him the time allowable for filing a dischargeability complaint was what fixed timeliness, and since the scheduling of Samuel’s claim for the first time set going a new period when he could file his dischargeability complaint, the belated scheduling was never untimely. If Samuel can pursue his other ground for contesting dischargeability, it seems he is not prejudiced by being denied the statutory ground of not scheduling his debt, simpliciter.
 

 The Supreme Court would appear -to have laid down a prophylactic rule in
 
 Birkett v. Columbia Bank
 
 which did not depend on whether nonscheduling was prejudicial, either by denying the unlisted credi
 
 *1534
 
 tor access to assets of the bankrupt, or by preventing a dischargeability complaint from being heard.
 

 We are of the opinion that both parties here are wrong as to the law, and that summary judgment on section 523(a)(3) grounds was not available to either party, as there were contested issues of fact. We accept, as the Seventh Circuit does, that under the new law the old prophylactic rule does not in a no-asset case any more deny a discharge to one who has failed to schedule for reasons of honest mistake, not “fraud or intentional design.” This would be an inequitable result, in the absence of prejudice. Hence, if Baitcher can show absence of fraud or intentional design, she should have her discharge, but this she could hardly expect to do, and did not do, on summary judgment.
 

 The mere timing of Baitcher’s actions suggest intentional design, if not fraud. She failed to schedule Samuel’s claim, though it relates to a debt primarily owed by The Flame, just as did all the other debts she did schedule. Her counsel puts forward for her, but without support in her own deposition in the record, that she supposed the state court had disposed of Samuel’s claim, so far as it related to her. But she must have also supposed that all the other duly-listed claims of creditors of The Flame were just as invalid against her personally as was Samuel’s claim. The explanation is thus no explanation at all, and a desire to impede Samuel for some reason peculiar to him, or perhaps, on learning of Samuel’s appeal, to let the state courts dispose of him without her having to explain a late scheduling, suggest themselves as more credible reasons for acting as she did. We cannot and do not make findings of fact, but do say it is the function of the trial court to do so, and without findings as to fraud or intentional design, no
 
 per se
 
 rule can be applied in Baitcher’s favor. To apply such a rule was error which requires reversal. We add the view that no
 
 per se
 
 rule can be applied in Samuel’s favor either.
 

 II
 

 Having decided that the belated scheduling of Samuel’s claim was not grounds for denial of a discharge under 11 U.S.C. § 523(a)(3) because it did not prevent Samuel from filing a complaint alleging other grounds, the district court proceeded, as had the bankruptcy judge, to consider the other grounds. These were: (a) that Baitcher had obtained the services of Samuel by false pretenses, a false representation, or actual fraud (11 U.S.C. § 523(a)(2)(A)); (b) that the claim was for fraud or defalcation by Baitcher while acting in a fiduciary capacity (11 U.S.C. § 523(a)(4)); or (e) that it was for willful and malicious injury by the debtor (11 U.S.C. § 523(a)(6)). The bankruptcy court held on summary judgment, and the district court affirmed, that Baitcher was not liable on various grounds, but the one common to all three sections was that when the fall that injured Samuel occurred, Baitcher was not in control of The Flame restaurant and so could not have done the things to Samuel that he alleged, nor was she responsible for his real grievance, the absence of workmen’s compensation coverage as mandated by Georgia law.
 

 It appeared that on first petitioning The Flame into voluntary bankruptcy, the Baitchers had sought to be installed as debtors in possession; however, receivers were appointed with full power, Sidney L. May and Gary Lundgren, on August 9, 1974. Samuel’s accident followed this on September 28, 1974. The receivers were then in control, made all business decisions, and maintained the bank account at the National Bank of Georgia. Why Samuel did not pursue his claim against “administrative funds” controlled by the receivers is a question raised by Baitcher, but not answered. This is virtually the sole defense originally asserted. Yet it appeared Barbara Baitcher, though not her husband, was physically present at the restaurant a great deal during the relevant period, and performed many of her old functions, and she acknowledges she was “employed” there, though not, she asserts, to purchase requisite insurance and pay premiums.
 
 *1535
 
 The court adduced from the record another defense,
 
 e.g.,
 
 that she was unaware the workmen's compensation had lapsed, and so could not have meant it maliciously. If under a legal duty to obtain insurance, this was said not a fiduciary duty within the meaning of section 523(a)(4).
 

 Before the district judge, Samuel urged that the bankruptcy judge had failed to effectuate the collateral estoppel which should have resulted from the state court decision and judgment. The principles of collateral estoppel in the federal courts are well known and need not be elaborated on here.
 
 Parklane Hosiery Co. v. Shore,
 
 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979);
 
 Blonder-Tongue Laboratories, Inc. v. University Foundation,
 
 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971);
 
 Commissioner v. Sunnen,
 
 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The district judge did not deny them, but held he was not required to suppose the Baitchers were debtors in possession when the bankruptcy court’s records conclusively showed otherwise. So he ignored the conclusions of the state supreme court and arrived at his own. If the state courts had based their decisions on such a proposition, that federal court records showed to be wholly incorrect, we would have a nice question indeed, which lovers of complication will grieve to know we do not have.
 

 The state court held the Baitchers were “agents” of Samuel’s employer and liable to him as such “agents,” not as employers themselves nor debtors in possession, nor as corporate officers of The Flame. It stated no conclusion who the employers were. Implicit in the attribution of “agent” status to Baitcher is that she had the ability and means to effectuate payment of the premiums to keep the insurance alive, and would have known of the need to do so, if anyone did. If the receivers, Mr. May and Mr. Lundgren, were the only ones who could have signed the checks to pay the premiums, that is not necessarily inconsistent with Baitcher being an “agent.” This was a judge-made gloss on the state statute. We suppose, since it sought to cover all employed persons, with an “agent” always responsible, it required that, if possible, in whatever unusual circumstances, someone always have a legal duty to see the statute was obeyed. Probably only the Georgia Supreme Court knows exactly what powers in Barbara Baitcher justified calling her an “agent” as of that time, but we must and do suppose there was evidence in the record which justified the appellation. There is nothing to show she did not have a full and fair opportunity to litigate whether she was an “agent” or not. There is that in the bankruptcy records to make it possible and nothing to make it impossible.
 

 The invocation, therefore, of the mere fact of appointment of the receivers
 
 per se
 
 to exonerate Barbara Baitcher, is wholly inconsistent with the conclusions of the Georgia Supreme Court and with the principles of collateral estoppel. The error necessitates a reversal. We are not, however, holding at this time that summary judgment on the complaint should have been awarded Samuel. Apart from the receivership, there are other obvious difficulties with applying the three involved sections of section 523(a), but we are unwilling to say there is no possibility of Samuel vacating the discharge after a trial on the facts on grounds other than late scheduling. Of course, those sections are never reached if it is concluded the original omission was not inadvertent but by intentional design.
 

 Conclusion
 

 It was error to grant summary judgment to Baitcher on the record before the court. There were triable issues of fact. The judgment is vacated and the cause is remanded for further proceedings in accordance with this opinion.
 

 VACATED and REMANDED.