In re Neal BEHIMER and Sandra Behimer, Debtors.

No. 87–15145.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Oct. 2, 1990.

**668**

Stephen L. Taylor, Springdale, Ark., for debtor.

Mark Lindsey, Fayetteville, Ark., for Carrol–Creditors.

John T. Lee, Siloam Springs, Ark., Trustee.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Pending before the Court is a motion filed by Neal Behimer and Sandra Behimer (debtors), seeking to add creditors after their chapter 7 discharge order. The debtors are seeking to add the claims of Rhonda Lou Ames, Ladene Nielsen, Martha Ann Arey [now Martha Ann Wills], J.B. Carrol, and Duane C. Carrol (Carrol-creditors). These claims are based on a September, 1989 judgment in the amount of $29,945.23 plus interest thereon at the rate of $8.23 per day from July 1, 1988 together with attorneys' fees in the amount of $2,995.00; real property taxes in the amount of $161.79; and costs for abstract, and title work in the amount of $258.00. This judgment was entered against the debtors after the debtors' discharge. The Carrol-creditors have objected to the motion, and contend that the debtors are barred at this stage of the proceedings from adding any additional claims. The Court held hearings on the motion on April 17 and 30, 1990.

### Jurisdiction

The Court has jurisdiction over this pending matter pursuant to 28 U.S.C. § 1334. Further, the above proceeding is a core proceeding within 28 U.S.C. § 157(b)(2). The following memorandum opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### Findings of Fact

On July 10, 1981, Nora Aline Carrol sold to Neal L. Behimer, under a document entitled "Land Contract and Escrow Agreement", 14.13 acres in Washington County, Arkansas, for $20,500.00. The terms of the contract provided for a $1,000.00 downpayment, and for the remaining $19,500.00 with interest thereon, at the rate of 10% per annum to be paid in monthly payments of $175.00 with two balloon payments due in 1985.

On August 21, 1981, Nora Aline Carrol and Neal L. Behimer entered into another land contract and escrow agreement wherein Carrol sold to Behimer an additional 10 acres in Washington County, Arkansas, for $20,000.00. The terms of this agreement provided for a $3,500.00 down-payment, and for the remaining $16,500.00 with interest thereon, at 10% per annum, to be paid in monthly payments of $150.00 with a balloon payment due in 1991.

On August 30, 1981, Neal L. Behimer sold to Henry Mahler, under a document entitled "Land Contract," the 24.13 acres which Behimer had previously purchased from Nora Aline Carrol. The purchase-price, interest, and payment terms of the Behimer–Mahler contract were virtually identical to those contained in the Behimer-Carrol land contracts and escrow agreements. Behimer testified at the bankruptcy hearing that he purchased the aforesaid lands from Nora Aline Carrol for Mahler.

The debtors filed their chapter 7 petition on May 22, 1987. The debtors filed "Schedules" and "Statement of Affairs" on June 8, 1987, reflecting that the case was an asset case. The Carrol-creditors were not listed in these documents. On June 18, 1987, the Court set a September 25, 1987 bar date for filing objections pursuant to 11 U.S.C. §§ 523(c) and 727. On January 20, 1988, the Court set an April 21, 1988 bar date for the filing of claims against the estate. There is no evidence that the Carrol-creditors ever received any notice of these bar dates.

On September 14, 1988, pursuant to 11 U.S.C. § 348(d) of the Bankruptcy Code, the Court entered an order discharging the debtors from all personal liability for debts existing on the date of the commencement of this case, or deemed to have existed on

such date. On March 31, 1989, a complaint was filed in the chancery court of Washington county by the Carrol-creditors against Behimer and Mahler, seeking foreclosure of the above real estate, and a deficiency judgment on the contracts of sale.

The evidence reflects that from the time of the Behimer–Carrol land purchases in 1981, Behimer had no involvement in the subject land-contracts until 1989. Behimer made no payments on the land contracts, and paid no taxes on the land. Mahler made payments directly to Nora Aline Carrol or her estate on behalf of Behimer. Further, no demand was ever made upon Behimer for any default in payments by Mahler. Behimer had no contact in regard to the subject properties until attorney Wayne Ball contacted him by telephone on April 1, 1989.

During this April 1, 1989 telephone conversation, Mr. Ball identified himself as an attorney for the Carrol-creditors, who were heirs of Nora Aline Carrol, and said that he was filing suit against Behimer and Mahler in order to clear the title on the Washington county property. Behimer testified that he made an offer to Ball to deed the property back to the Carrol-creditors, and that he would see if he could get Mahler to do the same. Ball indicated to Behimer that he thought this would satisfy his clients. Behimer testified that during the conversation he informed Ball that Behimer had filed bankruptcy.

Behimer executed warranty deeds on the properties in favor of the Carrol-creditors. Neither Ball nor Behimer, however, could locate Mahler in order for Mahler to execute warranty deeds on the property.

Behimer testified at the bankruptcy hearing that he subsequently learned that the Nora Aline Carrol estate and Mahler had re-negotiated the land contracts in 1985, and that they had agreed to an extension of Mahler's payments. Behimer was not contacted in regard to these negotiations. Further, Behimer was not called upon by the Nora Aline Carrol estate to make payments under this new agreement. Behimer stated, at the bankruptcy hearing, that at the time of the filing of his bankruptcy petition, he did not list the two contracts on his schedules as he believed the Nora Aline Carrol estate had relieved him from the debts because it had re-negotiated the contracts directly with Mahler, and had not included Behimer in these negotiations.

Ball testified that he had been contacted by the Carrol-creditors to represent them in the probate of the estate of Nora Aline Carrol. Ball testified that he prepared the foreclosure complaint, filed it, and called Mr. Behimer in regard to the subject property. He stated that he explained to Mr. Behimer that his efforts were directed toward returning the property to the Carrol-creditors at a minimum of cost. Ball stated that he discussed with Behimer the possibility of Behimer and Mahler executing warranty, or quitclaim deeds, conveying the lands back to the Carrol-creditors. Ball testified that Behimer was unsuccessful in obtaining any deeds from Mahler as he could not locate Mahler. Ball stated that Behimer had previously forwarded two warranty deeds to Ball, and that on April 10, 1989, Ball returned the deeds to Behimer, and proceeded with the lawsuit. Ball testified that he had no recollection of Behimer informing him of the bankruptcy proceedings in the April, 1989 telephone conversation. Ball stated that to the best of his recollection, Attorney James A. Penix, Jr. called him in September of 1989, and at that time they discussed that (1) the Behimers had filed bankruptcy; (2) the Carrol-creditors had not been listed on the bankruptcy petition; and (3) an order of discharge had been entered against the debtors with the Carrol-creditors receiving no notice of the bankruptcy proceedings.

Duane Carrol testified that he found out about the Behimers' bankruptcy proceeding in April, 1989, when Wayne Ball informed him about the bankruptcy filing.

On August 24, 1989, the chapter 7 trustee filed a "Notice of Filing Final Report and Account of Trustee, Applications for Compensation, Abandonment of Property, and Proposed Distribution to Claimants." On September 11, 1989, the Carrol-creditors were granted a judgment against the debtors. On October 23, 1989, the debtors filed

a "Motion to Add Creditors After Discharge of Debtor." The Carrol-creditors, on October 23, 1989, filed a response objecting to the motion.

Plaintiff's Exhibit No. 9, "Notice of Filing Final Report and Account of Trustee, Applications for Compensation, Abandonment of Property, and Proposed Distribution to Claimants," states:

> The account of the trustee shows total receipts of $12,530.87 and total disbursements of $2,439.42. The balance on hand is $10,091.45.

> In addition to expenses of administration as may be allowed by the court, liens, and priority claims totaling $12,448.70 must be paid in advance of any dividend to general creditors. Claims of general creditors totaling $438,605.00 have been allowed.[1]

### Conclusions of Law

█ The debtors' chapter 7 case remains open as of the date of this opinion. Therefore, Bankruptcy Rule 1009 is applicable to the case.

Bankruptcy Rule 1009(a) states:

Rule 1009. Amendments of Voluntary Petitions, Lists, Schedules and Statements.

> (a) General Right to Amend. A voluntary petition, list, schedule, statement of financial affairs, statement of executory contracts, or a chapter 13 statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, statement of financial affairs, statement of executory contracts, or chapter 13 statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

Bankruptcy Rule 1009(a).

█ Clearly under the expressed language of Bankruptcy Rule 1009(a) the debtors may amend their schedules and add creditors as a matter of course at any time before the case is closed.

The real question before this Court is whether at this stage in the administration of the case the granting of a motion to add the Carrol-creditors filed after an order of discharge would prejudice the Carrol-creditors as compared to the creditors of the estate who were included in the original schedules.

Even in instances where a chapter 7 case has been closed, the Circuit Courts of Appeals have held that absent the debtor's fraud, intentional omission or intentional design, the case may be reopened to allow discharge of a debt which existed at the time of the bankruptcy, but was not scheduled by the debtor. *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529 (11th Cir. 1986); *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539 (6th Cir.1985); *Stark v. St. Mary's Hospital (In re Stark)*, 717 F.2d 322 (7th Cir.1983) (per curiam).

In the instant case, at the hearing on the "Motion to Add Creditors After Discharge of Debtor" the Carrol-creditors presented no evidence that the omission of their claim from the petition and schedules was due to any fraud or intentional design by the debtors. To the contrary, the Court is convinced that Neal Behimer had sufficient reason to believe in 1987, when he filed his petition, that the Nora Aline Carrol estate was not going to pursue the Behimer–Carrol land-contract sales. Behimer, correctly, believed that the Nora Aline Carrol estate had elected to abandon its claims because (1) in 1985 the Nora Aline Carrol estate re-negotiated the land contract sales with Mahler, and extended the time in which Mahler had to make payments; (2) Behimer was not included in the 1985 renegotiations; (3) Nora Aline Carrol or her estate

---

1. The claim at issue is not included in the total amount of general claims as reflected in Plaintiff's Exhibit No. 9.

never requested that Behimer "make good" on any default in payments by Mahler; (4) Mahler, and not Behimer, made the payments on the Behimer–Carrol contracts; (5) Behimer paid no property taxes on the property; and (6), more importantly, from 1981 until 1989, eight years after the sale and two years after the filing of the bankruptcy, neither the Carrol-creditors nor Nora Aline Carrol contacted Behimer in regard to the property or any claim.

Unfortunately, neither party to the present proceeding sought to introduce the Trustee's Final Report and Account and Proposed Distribution filed on July 28, 1989 or the Trustee's Supplemental Final Report and Account and Proposed Distribution.[2] Nonetheless, from a review of plaintiff's exhibit No. 9, "Notice of Filing Final Report and Account of Trustee, Applications for Compensation, Abandonment of Property and Proposed Distribution to Claimants," it appears that even though this case is an "asset case," there are not sufficient funds in the estate to pay priority creditors in full, and therefore there are no funds available to pay anything to the general or unsecured creditors. The claim of the creditors to be added are based on a judgment against the debtors, and would fall within the classification of general or unsecured creditors.

The evidence would appear to establish that the Carrol-creditors would not be prejudiced by the addition and discharge of their debt. If the Carrol-creditors had been originally listed, they would not have received any payment from the estate and their debts would be discharged. If the Carrol-creditors are added at this late date, their debts will receive the same treatment.

This Court, however, is convinced that if the Carrol-creditors are added to the list of the debtors' creditors, they will not have been afforded the same procedural due process rights that were afforded to the creditors who were originally listed on the debtors' schedules. Those originally scheduled creditors had the opportunity to

attend a first meeting of creditors and question the debtors about their acts, conduct, property, liabilities, and financial condition. In addition, the creditors could ask questions relating to any matter which could effect the administration of the debtors' estate. *See* Bankruptcy Rules 2003 and 2004. Moreover, the originally scheduled creditors had an opportunity to file proofs of claim pursuant to Bankruptcy Rule 3002; to object to claims of exemptions pursuant to Bankruptcy Rule 4003; to file a complaint objecting to the discharge of the debtors pursuant to Bankruptcy Rule 4004(a); and to file a complaint to determine the dischargeability of a debt pursuant to Bankruptcy Rule 4007. *See* Bankruptcy Rules 3002, 4003, 4004(a) and 4007. If the pending motion is granted, with no provision being made for the Carrol-creditors to have an opportunity to investigate the debtors' financial affairs, the Carrol-creditors will be denied procedural due process.

Based on the above, this Court will enter an order granting the debtors' "Motion to Add Creditors After Discharge" filed on October 23, 1989. In order, however, to ensure that the Carrol-creditors will receive the same due-process afforded the other creditors in this case, the Court will permit the Carrol-creditors to: (1) file proofs of claims within thirty (30) days; (2) take the debtors' deposition in order to inquire about their acts, conduct, property, liabilities, and financial conditions, or any matters which could effect the administration of the estate within thirty (30) days; (3) file objections to the debtors' exemptions within thirty (30) days; (4) file complaints objecting to discharge, or to determine dischargeability of a debt within sixty (60) days; and (5) file objections to the trustee's final report, supplemental report, account and proposed distribution, or report of distribution within sixty (60) days. The time within which these various filings must occur begins from the date of the entry of an order based on this memorandum.

2. While this Court may take judicial notice of its orders and of the date of filing of pleadings in the case, it cannot take judicial notice of the matters alleged or set forth in the pleadings filed.

If any objections or complaints are filed, then the Court will conduct an evidentiary hearing on the merits as to the objections raised or complaints filed.