In re Thomas A. **LADNIER**, Debtor.

Thomas A. **LADNIER**, Plaintiff,

v.

Barbara **LADNIER**, Defendant.

Bankruptcy No. 89–00162.
Adv. No. 90–0192.

United States Bankruptcy Court,
S.D. Alabama.

April 8, 1991.

Stephen R. Windom, Mobile, Ala., for debtor.

Barry L. Thompson, Mobile, Ala., for defendant.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge:

This matter came on for hearing on the Complaint of the Debtor, Thomas A. Ladnier, to determine dischargeability of an indebtedness of the Defendant, Barbara Ladnier Hinote, under 11 U.S.C. § 523(a)(5), and the Counterclaim of the Defendant to declare the debt to be nondischargeable under 11 U.S.C. § 523(a)(5) and § 523(a)(3). After due deliberation on the pleadings, arguments of counsel and briefs subsequently filed, this Court concludes and orders as follows:

## FINDINGS OF FACT

The facts are undisputed. The Plaintiff/Debtor ("Plaintiff"), Thomas A. Ladnier, and the Defendant, Barbara Ladnier Hinote, were married from December 21, 1973 to December 28, 1981. The Defendant inherited approximately 160 acres of farm property from her father in 1973.[1] After her marriage to the Plaintiff, the Defendant executed a deed to herself and the Plaintiff to accomplish joint ownership of the 160 acres. A part of the property was leased for agricultural purposes. The Defendant used a portion of the rental income received to acquire additional property, which she owned jointly with the Plaintiff, her brother and her mother. The remainder was deposited into her individual savings account and used for other expenses.

In 1980, the parties jointly pledged 40 acres of the 160 acres of farm property to Federal Land Bank to obtain funds to buy and/or equip a fishing boat for the Debtor. The Plaintiff and the Defendant were divorced in 1981. Under the terms of the divorce decree issued December 28, 1981, the circuit court granted the 160 acres of farm property to the Defendant and required the Plaintiff to:

> convey to the Plaintiff [Ms. Hinote] all his right, title and interest in and to the jointly owned one hundred sixty (160) acres of land located in Baldwin County, Alabama, and the Defendant [Mr. Ladnier] shall be responsible for and pay the mortgage balance due on said property and hold the Plaintiff harmless therefore[;] ... the Defendant shall be allowed to use said property for the purpose of security for a loan he presently has for equipment for his shrimp boat.[2]

The Court finds this provision of the divorce decree to be a property settlement. After the parties' divorce, the Defendant received annual rental income from leasing 35 of the 40 acres pledged to Federal Land Bank.

The Plaintiff failed to make the loan payments as required by the divorce decree. The Plaintiff filed a Chapter 7 petition on January 20, 1989. Notices dated February 1, 1989 informed the Plaintiff's creditors that no assets were available for the estate and objections under 11 U.S.C. § 727 or complaints under 11 U.S.C. § 523(c) were to be filed by May 1, 1989. Subsequently, the Trustee, Theodore L. Hall, discovered assets of the estate. A second set of notices was sent to the Plaintiff's creditors on October 17, 1989. The

---

**1.** The Defendant received from her father 40 of the 160 acres before her marriage to the Plaintiff and inherited the additional 120 acres two weeks after her marriage upon her father's death.

**2.** The 40 acres pledged to the Federal Land Bank are part of the 160 acres mentioned in the divorce decree.

deadline for filing proofs of claim was January 15, 1990.[3] This Court allowed two claims for AmSouth Bank, N.A. in the amount of $11,297.42 and S.E.E., Inc. in the amount of $19,785.10. A total of $1,710.00 was available to creditors from the estate. The Plaintiff received a discharge in his bankruptcy proceeding on May 26, 1989.

Federal Land Bank instituted foreclosure proceedings on the mortgage in 1990. The Defendant was not listed as a creditor in the Plaintiff's Chapter 7 proceeding, and was unaware of the bankruptcy until she received Federal Land Bank's foreclosure notice in March or April 1990. To prevent the foreclosure, the Defendant borrowed $36,360.95 and repaid the loan.

The Plaintiff filed a complaint to determine the dischargeability of the debt owed the Defendant under 11 U.S.C. § 523(a)(5). The Defendant counterclaimed for $15,-907.92 declared nondischargeable under 11 U.S.C. § 523(a)(5) and § 523(a)(3).

## CONCLUSIONS OF LAW

The issues before this Court are: 1) whether the debt owed Federal Land Bank under the divorce decree is in the nature of alimony, maintenance or support and therefore nondischargeable under § 523(a)(5)(B); and 2) whether the the debt is nondischargeable under 11 U.S.C. § 523(a)(3)(A) because the Plaintiff failed to list the Defendant as a creditor in his bankruptcy proceeding or to give the Defendant notice of the proceeding. Under Section 523(a)(5)(B) of the Bankruptcy Code, a debt to a former spouse or child of the debtor in connection with a divorce decree is nondischargeable if the debt is "actually in the nature of alimony, maintenance, or support ...". An unscheduled debt cannot be discharged under 11 U.S.C. § 523(a)(3)(A). This Court finds the debt to be in the nature of a property settlement; however, the debt is nondischargeable under § 523(a)(3)(A) of the Code to the extent of a *pro rata* share of the total amount distrib-

uted to the unsecured creditors in the Plaintiff's bankruptcy.

When applying § 523(a)(5)(B), the bankruptcy court must only decide whether or not the debt can be legitimately characterized as support, rather than a property settlement. *In re Harrell*, 754 F.2d 902, 906 (11th Cir.1985). The language of § 523(a)(5)(B) does not require "precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change." *Id.* The provision in the divorce decree is a property settlement on its face. Accordingly, this Court finds § 523(a)(5)(B) is not applicable to the Defendant.

Under § 523(a)(3)(A) of the Bankruptcy Code, a discharge under the Code does not discharge an individual debtor from any debt

> neither listed nor scheduled under [11 U.S.C. § 521(1)], with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) ... timely filing of a proof of claim, unless such creditor has notice or actual knowledge of the case in time for such timely filing ...

The Defendant was neither listed nor scheduled as a creditor of the Plaintiff in his bankruptcy proceeding. The deadline for filing a proof of claim was May 1, 1989. The Plaintiff received a discharge on May 26, 1989. The Defendant had no notice or knowledge of the bankruptcy in time to make a timely filing.

The Eleventh Circuit has held that in no-asset bankruptcy cases, § 523(a)(3) does not deny discharge to a debtor who has failed to schedule a creditor for reasons other than fraud or intentional design. *Matter of Baitcher*, 781 F.2d 1529, 1534 (11th Cir.1986). The Eleventh Circuit maintained that to deny the debtor discharge for simply failing to list a creditor by inad-

---

**3.** The notice stated proofs of claim were to be filed ninety (90) days from the date of the notice.

vertence is inequitable. *Baitcher,* 781 F.2d at 1533. Crucial to the Eleventh Circuit's decision was the no-asset nature of the case. The creditor was not harmed by the debtor's failure to list him because there were no assets for any distribution for the benefit of creditors; whether a creditor was listed or not, he still received nothing. *See In re Anderson,* 104 B.R. 427, 429 (Bankr.N.D.Fla.1989). Similarly, the Defendant as a creditor would have received only a portion of her present claim even if she had been listed and filed a claim in the Plaintiff's bankruptcy. Despite the delay caused by the Plaintiff's failure to list her debt, the Defendant has no greater claim than any other creditor to share in the estate. Balancing the debtor's right to a fresh start with the creditor's right to payment of a debt, this Court finds that equity demands the Defendant receive an amount equal to a *pro rata* share of the distribution to the creditors in the Plaintiff's bankruptcy that she would have received if she had been given notice and had filed an allowable claim.

Including the Defendant's claim of $36,-360.95, the Plaintiff's total of allowed claims was $67,443.47. AmSouth Bank, N.A., had a claim of $11,297.42, and S.E.E., Inc.'s claim was $19,785.10. The total amount available to creditors was $1,710.00. If the Defendant had notice of the Plaintiff's bankruptcy and had an allowable claim of $36,360.95, the Defendant's claim would have comprised 54 percent of the Plaintiff's total allowable claims and the Defendant would have received $923.40. Based on the foregoing, the Defendant's counterclaim for the determination of the nondischargeability is due to be granted in the amount of $923.40.