**In the matter of Marshall Bruce GARRETT, Debtor.**

No. 98–20984.

United States Bankruptcy Court, S.D. Georgia, Brunswick Division.

Aug. 3, 2001.

---

8. Unfortunately, unlike the issue of lifting the stay, the issue of whether post-petition interest may be included in the repayment plan despite § 502 is not addressed in the legislative history.

[black bar]

William S. Orange, III, Brunswick, GA, for debtor.

R. Michael Souther, Brunswick, GA, trustee.

## MEMORANDUM AND ORDER ON MOTION TO REOPEN

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

The above captioned matter came before this Court for a hearing on April 4, 2001. Debtor in this case, Marshall Bruce Garrett, seeks to reopen his Chapter 7 case to add Celia Martinez as a creditor so that he can avoid a judgment lien that she holds against him and file a complaint to determine dischargeability of this obligation. This Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Debtor, Marshall Bruce Garrett, filed his no asset Chapter 7 petition on August 12, 1998 and received a discharge on November 30, 1998. Debtor testified that at the time of filing, he was not aware of a 1996 judgment lien against him in the amount of $6000.00 held by Celia Martinez, and therefore failed to list it in his schedules. He stated that he first became aware of the judgment in the spring of 2000. Debtor testified that he was never served with notice of the action in the Magistrate Court of Glynn County. The Court left the record open for counsel to examine the Magistrate Court's file and determine if personal service was made on the Debtor. That examination revealed a copy of a Sheriff's Entry of Service dated April 3, 1996, evidencing personal service on the Debtor. The Court also received a copy of a Motion to Set Aside Default Judgment filed in 1996, along with a supporting affidavit by the Debtor in which he avers that he is familiar with the case of *Martinez v. Garrett*, but was never served with a copy of the Statement of Claim filed in the case. His affidavit further states that he first became aware of the case on October 29, 1996, when the Plaintiff showed up at his office to demand payment of a judgment that she had against him. The Motion to Set Aside, Affidavit, and admission regarding Ms. Martinez's personal demand on him, all contradicted his testimony under oath at this proceeding, and all occurred prior to his filing this case.

### CONCLUSIONS OF LAW

[black square] 11 U.S.C. § 350(b) provides that a "case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other such cause." *See* 11 U.S.C. § 350(b). It is apparent that this section deals with reopening cases for two quite different reasons. One is to administer previously unadministered assets—thus benefitting creditors. The second is to provide some additional relief to a debtor whose case has been fully administered and closed. This case presents the question of the standard to be applied to the second category.

[black square] The cases are legion that the issue is one addressed to the sound discretion of the court, guided by the statute and equitable considerations. *See In re Alpex Computer Corporation*, 71 F.3d 353, 356 (10th Cir.1995) ("While the decision to reopen remains within the broad discretion of the bankruptcy court, ... it must be tethered to the parameters of § 350(b), or it is an abuse of discretion."); *In re Case*, 937 F.2d 1014, 1018 (5th Cir.1991) ("The

phrase "or other cause" as used in Section 350(b) is a broad term which gives the bankruptcy court discretion to reopen a closed estate or proceeding when cause for such reopening has been shown. . . . This discretion depends on the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings."); *In re Rosinski,* 759 F.2d 539, 540–41 (6th Cir.1985) ("It is well settled that decisions as to whether to reopen the bankruptcy cases and allow amendment of schedules are committed to the sound discretion of the bankruptcy judge and will not be set aside absent abuse of discretion.").

▪ A debtor's desire to amend schedules to include creditors is ordinarily sufficient cause to reopen, absent some harm or prejudice to the omitted creditor. *In re McDaniel,* 217 B.R. 348, 352 (Bankr. N.D.Ga.1998) (quoting *In re Jensen,* 46 B.R. 578, 581 (Bankr.E.D.N.Y.1985)). "Harm or prejudice" will arise if a creditor is precluded from participating in the case's distribution, or if it is unable to challenge the dischargeability of a debtor's obligation. *Id.* Reopening of cases often occurs so that dischargeability of debts can be determined.

▪ The Eleventh Circuit articulated a good faith test as a prerequisite to reopening and dischargeability in the case of *In re Baitcher,* 781 F.2d 1529 (11th Cir.1986). In *Baitcher* the court suggested that even in a "no asset" case a discharge of a nonfraud debt is denied when debts are omitted from debtor's schedules as a result of fraud or intentional design on the part of the debtor. "If *Baitcher* can show absence of fraud or intentional design, she should have her discharge." *Id.* at 1534. *Baitch-*

er acknowledged that the Seventh Circuit decision of *In re Stark,* 717 F.2d 322 (7th Cir.1983), permitted a debtor to reopen a case to add an omitted debt so as to permit a previously unscheduled debt to be encompassed in a debtor's discharge, but distinguished *Stark,* because it held there was "no evidence of fraud or intentional design" in the debtor's omission of the debt. The Eleventh Circuit then ruled that if a debtor's actions suggest that there was intentional design or fraud in the omission of a creditor from the schedules the result would be different. *Id.* at 1534. The *Stark* court apparently held the view—no longer the majority—that the decision whether to reopen was also dispositive of the dischargeability question, but the narrow holding in *Stark* was whether the debtor should be allowed to reopen. The Eleventh Circuit accepted the *Stark* principle, while distinguishing it on its facts. *Baitcher* thus established that, in the Eleventh Circuit, good faith is a threshold debtors must satisfy in order to receive a discharge, but it is less clear whether it held lack of good faith would be a direct bar to dischargeability engrafted into Section 523, or only a bar to reopening under Section 350, and thus, it believed, an indirect bar to dischargeability. In fact, *Baitcher* observed that although the creditor's dischargeability complaint might be difficult to sustain under Section 523(a), that issue would never be "reached if it is concluded the original omission was not inadvertent but by intentional design," implying that the case should not be reopened in the first instance. *In re Baitcher,* 781 F.2d at 1535.

▪ However, *Stark* notwithstanding,[1] the mere reopening of a case does not *ipso*

---

1. *See In re Madaj,* 149 F.3d 467 (6th Cir. 1998); *Judd v. Wolfe,* 78 F.3rd 110 (3rd Cir. 1996); *In re Beezley,* 994 F.2d 1433 (9th Cir.

1993); *In re Betty Young Johnson,* Ch. 7, 208 B.R. 746 (Bankr.S.D.Ga.1996); *In re Keenom,*

*facto* determine the question of dischargeability of a previously unscheduled debt. After the case is reopened, it is still necessary to bring an action under Section 523 to determine whether the late-scheduled claim is dischargeable. As to these debts, dischargeability is governed by Section 523(a)(3) which excepts debts from discharge in two circumstances: Section 523(a)(3)(B) excepts from discharge "fraud type" debts which were not scheduled by the debtor in time to permit the creditor to timely file a case seeking a determination of nondischargeability. These obligations include debts arising from fraud, false pretenses, embezzlement, larceny, or other willful and malicious injury. *See* 11 U.S.C. §§ 523(a)(2), (4), and (6). Rule 4007(c) requires that all objections to the discharge of these "fraud type" debts shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to Section 341(a). *See* Fed. R.Bank.P. 4007(c). Because a court cannot grant an extension of this deadline unless a request is made before the time has expired, Section 523(a)(3)(B) excepts from discharge any "fraud type" debt neither listed nor scheduled in time to permit a creditor to file a dischargeability complaint. *See In re Betty Young Johnson,* Ch. 7, 208 B.R. 746 (Bankr.S.D.Ga.1996) (discussing dischargeability in relation to fraud and non-fraud debts). The creditor, however, does not need to establish that it would have prevailed under Section 523(a)(2), (4) or (6) if the claim had been timely listed. Rather, as an apparent penalty imposed on the debtor for the omission, the creditor must only show that it held a claim "of a kind" specified in those sections—a claim which *colorably* would

have been held nondischargeable. *Id.* at 748.

All other debts—"non-fraud" debts— debts not falling within the scope of Sections 523(a)(2), (4), or (6) are excepted if the debtor fails to provide the creditor with an opportunity to timely file a proof of claim in order to share in any distribution to creditors. In a no asset case, however, where it appears that there are no assets from which a dividend can be paid, Rule 2002(e) permits the clerk to issue a notice extending the time for filing claims indefinitely or until sufficient assets become available for payment of a dividend. *See* Fed.R.Bank.P.2002(e). Therefore, an unscheduled creditor in a case with no assets is never prevented from "timely filing" proof of its claim, as contemplated by section 523(a)(3)(A). *In re McDaniel, supra,* at 3; *see In re Betty Young Johnson, supra.* Accordingly, in a "no-asset" case, non-fraud claims are still discharged, even if they are never added to the schedules. In an asset case, unscheduled non-fraud claims are nondischargeable.

■ I construe *Baitcher*,[2] as requiring that a debtor seeking to reopen and add an omitted claim must establish that the prior omission occurred in good faith and was not the result of any intentional design. While courts now recognize that the decision, whether to reopen and allow the claim to be added or to deny reopening, does not *ipso facto* control the question of dischargeability because of the provisions of Section 523(a)(3), I conclude that a debtor is not permitted under *Baitcher* to automatically reopen a case upon request and move directly to the Section 523 issue. Indeed the language of Section 350 is

231 B.R. 116 (Bankr.M.D.Ga.1999) (Walker, J.).

**2.** *Baitcher* stated that a section 523(a) issue would never be "reached if it is concluded the

original omission was not inadvertent but by intentional design." *Baitcher,* 781 F.2d at 1535.

"may" rather than "shall," suggesting that reopening involves more than a mere administrative act. *See Hawkins v. Landmark Finance Company,* 727 F.2d 324, 325 (4th Cir.1984) ("The statute [§ 350(b)] is phrased in permissive language, and we think that it would do violence to the statute either to say that a closed case must be reopened or that a closed case may never be reopened.") *Baitcher* requires that a good faith standard must be met prior to reopening a case in order to afford relief to the debtor.

■ Which begs the question: Does all of this matter? Isn't the result the same whether *Baitcher* is construed to require the debtor show that debts were omitted in good faith as an element of either a Section 350 reopening motion or a Section 523 dischargeability complaint?

The answer is no. If the good faith test applies only to Section 523, then *Baitcher* has added a nondischargeable category (bad faith omission from the schedules of a non-fraud claim) that Congress never adopted. If it applies to Section 350, the case cannot be reopened and dischargeability remains unadjudicated. However, debtors have the right to plead a bankruptcy discharge as an affirmative defense to an action on the debt in state court. The state courts have concurrent jurisdiction to determine dischargeability, at least after the case is closed. O.C.G.A. § 9–11–8(c) states in relevant part that in pleadings "a party shall set forth affirmatively ... [a] discharge in bankruptcy" as a defense. *See In re Gardner,* 194 B.R. 576, 578 (Bankr.D.S.C.1996) (stating that one of the avenues available to parties includes raising the bankruptcy discharge as an affirmative defense allowing a court with jurisdiction over the suit to determine if the debt falls within an exception to discharge); *In re Carter,* 38 B.R. 636, 637 (Bankr.D.Conn.1984) ("Congress gave

state courts concurrent jurisdiction with the bankruptcy court to adjudicate the ground of nondischargeability alleged by the State. If the only "cause" claimed is the opportunity the reopening gives the debtor to choose which of two courts of competent jurisdiction will presently determine the dischargeability issue, it has been held that benefit is insufficient to "accord relief to the debtor" or to constitute "other cause" for reopening pursuant to § 350(b)."); *In re Littlefield,* 17 B.R. 549 (Bankr.D.Maine 1982) (stating that the bankruptcy Court has only concurrent jurisdiction with other courts of competent jurisdiction as to all dischargeability claims not falling under Section 523(a)(2), (4), and (6)); *Indiana University v. Canganelli,* 149 Ill.App.3d 852, 103 Ill.Dec. 278, 501 N.E.2d 299 (1986) (holding that because the bankruptcy court has concurrent jurisdiction with a state court in cases not falling under Section 523(a)(2), (4), or (6), that the failure of debtor to have a student loan debt declared dischargeable due to hardship in the bankruptcy court did not preclude him from later raising the defense in a state court proceeding). *See also Keenom, supra,* at 6.

Thus, if in a closed "no-asset" case, a non-fraud claim is unscheduled and later sued upon, the debtor may plead Section 523(a)(3) as a defense in the court where the suit is brought. What *Baitcher* does is deny the debtor's right to reopen and obtain a federal forum, if the omission was made through design or fraudulent intent. This right may or may not be valuable. It may deprive debtor of what is viewed as a more specialized, and perhaps more sympathetic, forum to litigate this question, or it may not. Whatever the practical effect, the federal forum is lost to the debtor who failed to establish good faith in omitting the debt from debtor's schedules. The *sine qua non* of bankruptcy is full disclo-

sure and the granting of relief to honest but unfortunate debtors. Under *Baitcher*, those who fail the test are not entitled to reopen their case and obtain a determination, in the bankruptcy forum, of entitlement to a discharge under Section 523.

▮ Likewise, I hold that a debtor who fails the good faith test loses the federal remedy of lien avoidance as a result of the bad faith omission of a debt. This remedy exists only pursuant to 11 U.S.C. § 522 and does not exist as a matter of state law. Therefore, if a case is not reopened, the loss of federal jurisdiction will, unlike the dischargeability question, preclude debtor's lien avoidance.

In the present case, Debtor's testimony in this Court that he had no knowledge of the judgment held against him by Ms. Martinez until the spring of 2000 is contradicted by his own affidavit, filed in conjunction with his Motion to Set Aside a Judgment in which he attested that he first became aware of Ms. Martinez's judgment against him in October of 1996, two years before the filing of his Chapter 7 petition. The fact that the Debtor had prior knowledge of the claim, but still failed to schedule it in his Chapter 7 petition, evidences that its omission was intentional. Due to this lack of good faith the Debtor should not be allowed to re-open his case to add the claim of Celia Martinez to his schedules, seek to avoid her lien, or seek a determination of dischargeability in this Court.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Debtor's Motion to Reopen is Denied.