**In the Matter of Jack H. BARFIELD, Jr., Doris Barfield, Debtors.**

**No. 94–40687.**

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

Sept. 24, 2002.

Gerald Olding, Savannah, GA, for Plaintiff/Movant.

Wiley A. Wasden, III, Trustee, Savannah, GA, for Defendant/Respondent.

### MEMORANDUM AND ORDER ON DEBTORS' MOTION TO REOPEN

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Jack H. Barfield, Jr., and Doris Barfield ("Debtors") filed a Chapter 7 case on April 22, 1994, in which no assets were available for distribution to unsecured creditors. They received a discharge on August 9, 1994, and the case was closed on August 15, 1994. On March 12, 2002, Debtors filed a motion requesting this Court to reopen their case for the purpose of amending their schedules to add Interstate General Government Contractors, Inc. ("IGGC") as a creditor. IGGC objected, and this Court heard testimony and oral argument at a hearing held on May 15, 2002. The Court, pursuant to its jurisdiction in this matter under 28 U.S.C. § 157(b), makes the following Findings of Fact and Conclusions of Law in accordance with the directives of Bankruptcy Rule 7052(a).

### FINDINGS OF FACT

IGGC obtained a pre-petition judgment for approximately $20,000.00 in 1992. When Debtors filed their Chapter 7 petition, they did not list IGGC as an unsecured creditor on Schedule F. They included IGGC, however, on their Statement of Financial Affairs under the category "suits, executions, garnishments, and attachments" as a suit to which they "are or were a party within one year immediately preceding the filing of this bankruptcy case." Mr. Barfield testified that he listed IGGC's claim as a pending lawsuit because IGGC had not then attempted to take any property in satisfaction of the judgment debt at the time Debtors filed their case.

The judgment was granted to IGGC as a result of a contract dispute based on Mr. Barfield having terminated IGGC a s a subcontractor. Mr. Barfield had answered IGGC's civil action with "a letter" but did not have an attorney. After their discharge in bankruptcy, Debtors purchased some real estate, and IGGC sought to attach a lien to that property to satisfy the judgment. Mr. Barfield testified that he believed the debt had been discharged until he received a notice that IGGC had revived the judgment.

Debtors attorney asserted that because the claim existed prior to their filing and because they believed they had properly disclosed IGGC in their petition, the case should be reopened for the purpose of adding the claim. IGGC, having had no opportunity during the pendency of the case to make an analysis to determine whether there was issue as to non-dischargeability under 11 U.S.C. § 727, asserts that the eight-year delay between the closing of the case and the filing of the motion to reopen has prejudiced IGGC. On that basis, IGGC opposes reopening.

### CONCLUSIONS OF LAW

Issues with respect to a determination of whether to reopen a bankruptcy case are addressed to the sound discretion of the bankruptcy court, guided by the bankruptcy statute and equitable considerations. *E.g., In re Garrett*, 266 B.R. 910,

912 (Bankr.S.D.Ga.2001) (noting that cases so stating are numerous).

■ In *Garrett* I ruled that, notwithstanding some uncertainty concerning the scope of the Eleventh Circuit decision in *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529 (11th Cir.1986), the sole test for determining whether to reopen a case to schedule an omitted claim is whether the original omission occurred in good faith and was not the result of the debtor's intentional design. Under this view, the question of harm or prejudice to the creditor is not a factor. That concept permeated many older cases, but is relevant only if the act of reopening of the case automatically results in discharge of the claim that is added tardily. As *Baitcher, Stark v. St. Mary's Hospital (In re Stark)*, 717 F.2d 322 (7th Cir.1983), and other opinions demonstrate, the older cases adopted that view of reopening *vis a vis* dischargeability.

■ *Garrett* articulated the better view that reopening does not automatically result in discharge. Because the dischargeability issue is still ripe for determination under § 523(a)(3), the act of reopening a case does not result in the type of "harm or prejudice" to the creditor that *Baitcher* anticipated. I explained in *Garrett:*

> The Eleventh Circuit articulated a good faith test as a prerequisite to reopening and dischargeability in the case of *In re Baitcher.* In *Baitcher* the court suggested that even in a "no asset" case a discharge of a non-fraud debt is denied when debts are omitted from debtor's schedules as a result of fraud or intentional design on the part of the debtor .... *Baitcher* acknowledged that the Seventh Circuit decision of *In re Stark,* 717 F.2d 322 (7th Cir.1983), permitted a debtor to reopen a case to add an omitted debt so as to permit a previously unscheduled debt to be encompassed in a debtor's discharge, but distinguished

*Stark,* because it held there was "no evidence of fraud or intentional design" in the debtor's omission of the debt. The Eleventh Circuit then ruled that if a debtor's actions suggest that there was intentional design or fraud in the omission of a creditor from the schedules the result would be different. The *Stark* court apparently held the view—no longer the majority—that the decision whether to reopen was also dispositive of the dischargeability question, but the narrow holding in *Stark* was whether the debtor should be allowed to reopen. The Eleventh Circuit accepted the *Stark* principle, while distinguishing it on its facts. *Baitcher* thus established that, in the Eleventh Circuit, good faith is a threshold debtors must satisfy in order to receive a discharge, but it is less clear whether it held lack of good faith would be a direct bar to dischargeability engrafted into Section 523, or only a bar to reopening under Section 350, and thus, it believed, an indirect bar to dischargeability. In fact, *Baitcher* observed that although the creditor's dischargeability complaint might be difficult to sustain under Section 523(a), that issue would never be "reached if it is concluded the original mission was not inadvertent but by intentional design," implying that the case should not be reopened in the first instance.

> . . . .

Which begs the question: Does all of this matter? Isn't the result the same whether *Baitcher* is construed to require the debtor show that debts were omitted in good faith as an element of either a Section 350 reopening motion or a Section 523 dischargeability complaint?

The answer is no. If the good faith test applies only to Section 523, then *Baitcher* has added a nondischargeable category (bad faith omission from the

schedules of a nonfraud claim) that Congress never adopted. If it applies to Section 350, the case cannot be reopened and dischargeability remains unadjudicated. However, debtors have the right to plead a bankruptcy discharge as an affirmative defense to an action on the debt in state court. The state courts have concurrent jurisdiction to determine dischargeability, at least after the case is closed. O.C.G.A. § 9–11–8(c) states in relevant part that in pleadings "a party shall set forth affirmatively [a] discharge in bankruptcy" as a defense.

. . . .

Thus, if in a closed "no-asset" case, a non-fraud claim is unscheduled and later sued upon, the debtor may plead Section 523(a)(3) as a defense in the court where the suit is brought. What *Baitcher* does is deny the debtor's right to reopen and obtain a federal forum, if the omission was made through design or fraudulent intent. This right may or may not be valuable. It may deprive debtor of what is viewed as a more specialized, and perhaps more sympathetic, forum to litigate this question, or it may not. Whatever the practical effect, the federal forum is lost to the debtor who failed to establish good faith in omitting the debt from debtor's schedules. The *sine qua non* of bankruptcy is full disclosure and the granting of relief to honest but unfortunate debtors. Under *Baitcher*, those who fail the test are not entitled to reopen their case and obtain a determination, in the bankruptcy forum, of entitlement to a discharge under Section 523.

*In re Garrett*, 266 B.R. at 913–16 (internal citations omitted).

■ Here, pursuant to my holding in *Garrett*, the reopening test is met if Debtors show that the omission occurred in good faith and was not the result of any intentional design. Although Debtors were clearly at fault for failing to list IGGC as a judgment creditor in the bankruptcy schedules, so as to provide notice of the Chapter 7 case, Debtors' disclosure of the claim in their Statement of Financial Affairs as a pending lawsuit evidences a lack of fraudulent intent. "Intentional design is evidenced by a blatant disregard of a known duty, deception, lack of honesty and good faith." *In re Wilkins*, 185 B.R. 624, 626 (Bankr.M.D.Fla.1995). Debtors' believed they had listed IGGC's claim and that the debt had been discharged. Their failure to properly list that claim was negligent; however, no intentional design or fraudulent intent has been alleged or is apparent.

I conclude, therefore, that because Debtors did not fraudulently omit IGGC's claim in their no-asset Chapter 7 case, Debtors may reopen their case for the purpose of adding IGGC's claim. To be clear, the question of dischargeability is unresolved. Debtors are allowed 45 days to file a complaint under § 523 if they so choose. If not, the case will be closed at the expiration of that time.

*ORDER*

Pursuant to the foregoing Findings of Fact and Conclusions of Law IT IS THE ORDER OF THIS COURT that Debtors' Motion to Reopen their case is GRANTED. Chapter 7 Case Number 94–40687 is hereby REOPENED.