**In re Louise HICKS, Debtor.**

**Bankruptcy No. LA 92–50675–LF.**

United States Bankruptcy Court,
C.D. California.

July 12, 1995.

Ronald M. Stark, Ronald M. Stark & Associates, Norwalk, CA, for debtor.

## OPINION RE MOTION TO REOPEN BANKRUPTCY CASE

LISA HILL FENNING, Bankruptcy Judge.

Debtor has moved to reopen her "no-asset" Chapter 7 case so that she can seek an order holding a prepetition creditor in contempt for violating the discharge injunction of 11 U.S.C. § 524.[1] This is the debtor's second motion to reopen this case. The purpose of the first motion was to amend the schedules to add an omitted creditor who had filed suit on a prepetition claim. That motion was denied based upon *In re Beezley,* 994 F.2d 1433 (9th Cir.1993), which holds that, in a no-asset Chapter 7 case in which no claims bar date was ever set, all prepetition debts are discharged, whether scheduled or unscheduled. The state court, however, refused to halt the proceedings, denied summary judgment, and set the matter on a pretrial schedule heading for an early trial. The debtor now seeks to reopen this case, so that she can obtain an order from this Court to stop

---

1. All statutory references herein are to 11 U.S.C. §§ 101–1330 (1994) (the "Bankruptcy Code"), unless otherwise noted.

the creditor from proceeding further in the state court and to hold him liable for violation of the discharge injunction. For the reasons set forth below, this Court will reopen this case to permit the debtor to file an adversary proceeding against her persistent prepetition creditor.

## I. FACTS

On November 23, 1992, Louise Hicks filed a Chapter 7 bankruptcy petition. Her discharge was entered in February 1993, and the no-asset case was closed. Eight months later, Melvin Flowers sued the debtor in state municipal court on two promissory notes allegedly signed by the debtor in early 1991, about eighteen months before the bankruptcy filing. Hicks had not listed Flowers as a creditor in her case. Upon being served with the post-discharge complaint, debtor filed her first motion to reopen, seeking to amend her schedules to add the disputed, prepetition claim of Flowers. That motion was denied in January 1994 based upon *Beezley.*

Now fully informed about the debtor's bankruptcy discharge and about the *Beezley* decision, Flowers continues to argue that the discharge is inapplicable, solely because of the debtor's failure to schedule his claim. He has, however, never alleged that debtor committed fraud or any other wrongful conduct that might make this debt nondischargeable under § 523(a)(2), (4), or (6). Pressing forward with his state court action, Flowers filed a motion for summary judgment. The debtor contested Flowers' factual allegations and asserted that her discharge barred prosecution of the action. Concluding that a triable issue of fact existed concerning the debtor's liability on the notes, the state court denied the motion on that basis. It declined, without explanation, to rule on the legal effect of the discharge. Facing the prospect of trial on the merits, the debtor filed her second motion to reopen, seeking to hold Flowers in contempt for willful violation of the discharge injunction.

**2.** All rules references herein are to the Federal Rules of Bankruptcy Procedure, unless otherwise

## II. DISCUSSION

This case involves a recurring problem in individual Chapter 7 bankruptcy cases: how to deal with claims and creditors omitted from the schedules filed by the debtor. Usually the debtor discovers the omission when that creditor files suit against the debtor, or pursues other collection actions. Schedules can be amended to add creditors "as a matter of course at any time before the case is closed." FED.R.BANKR.P. 1009(a).[2] But that time is short: a simple Chapter 7 no-asset case will generally be closed by the clerk within four to six months after filing. *See* Res. & Dev. Dep't, "Analysis of Case Processing Measures," U.S.BANKR.COURT—CENTRAL DIST. OF CALIF., August 1994 (incorporating closing statistics provided by the Administrative Office of the United States Courts) ("Case Processing Rep."). Once a case is closed, a motion to reopen the case for further administration is required before an amendment to the schedules can be filed, a lien can be avoided under § 522(f), or the relief sought here can be obtained.

Omitted creditors by definition are not on the creditor matrix or schedules. Therefore, the general case notices are not sent to them. The key issue is whether their claims are discharged under the circumstances. Section 523(a)(3) addresses this issue, providing that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> > (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

noted.

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

. . . .

The creditor in this case has not asserted that his claim is of a kind specified in § 523(a)(2), (4), or (6). Therefore, § 523(a)(3)(A) governs. The factual question under this subsection is whether the creditor received formal notice from the court or otherwise learned about the bankruptcy case in time to file a proof of claim. If so, the claim is discharged. If not, it is excepted from the discharge. On this record, it is undisputed that the creditor did not have notice until after the case was closed. It is also undisputed that the no-asset notice sent to the scheduled creditors in this case informed them that no claims bar date had been set. Therefore, even a claim filed today would be timely.

## A. Notice Requirements in Bankruptcy Cases

■ Unlike regular civil cases in which the plaintiff must effect proper service in order to obtain jurisdiction over the defending parties, Rule 2002(f) requires the bankruptcy court clerk to give the required notice of the commencement of the bankruptcy case to all creditors. The clerk's only information about the identities and addresses of creditors to be served with the case notices comes from the debtor. Section 521(1) imposes upon the debtor an affirmative duty to file a comprehensive list of creditors. Even emergency filings must be accompanied by a list containing the name and address of "each creditor." Rule 1007(a); *see also* Official Form 6 (schedules require list of names and addresses of all creditors); Local Bankr.R. 103(7), CALIF.RULES OF COURT: U.S.BANKR. COURT—CENTRAL DIST. OF CALIF. (West 1994) (emergency petitions must contain master mailing list of creditors). This obligation to list all creditors' names and addresses is part

of the debtor's duty of full disclosure that is the *quid pro quo* for the fresh start provided by the discharge. *See* Local Bankr.R. 105(6)(e), *supra* (debtor has obligation to assure accuracy of schedules and mailing lists); *see also In re Adams,* 734 F.2d 1094 (5th Cir.1984) (omission of creditor from mailing matrix is just as impermissible as omission from formal schedules).

Despite this mandate that all creditors be scheduled, many are not. Debtors often explain in open court that they did not bother to list debts that they intend to pay and not discharge. One study has concluded that 10% of all homeowners do not even schedule their mortgage debt. *See* Teresa A. Sullivan et al., *As We Forgive Our Debtors: Bankruptcy and Consumer Credit in America* 134–35 (Oxford Press 1989). This number almost certainly underreports the problem, for the study did not—indeed could not—discover those debts omitted from schedules by debtors who intended to defraud their creditors.

As a matter of economy and efficient administration, the clerk's Rule 2002(f) notice is ordinarily combined with several other notices also required by Rule 2002. The resulting form is awkwardly but descriptively entitled "Notice of Commencement of Case under Chapter 7 [or 11, 12 or 13] of the Bankruptcy Code, Meeting of Creditors and Fixing of Dates." *See* Form 9, Official Bankruptcy Forms. This notice is sent to all scheduled creditors shortly after the filing of the petition. It includes: (1) the notice of the commencement of the case; (2) the notice of the first meeting of creditors to be conducted by the United States Trustee, as required by § 341(a); and (3) the notice of the deadline for filing complaints objecting to the discharge or excepting a particular debt from the discharge, set by Rule 4007(c) as 60 days after the first meeting of creditors.

■ Rule 2002 contemplates that a notice of the deadline for filing claims will also be included in this omnibus notice. Rule 3002(c) sets the claims deadline as 90 days after the date first set for the meeting of creditors. If, however, the debtor lacks unencumbered assets from which a liquidation could produce a dividend to unsecured creditors, the clerk

is authorized by Rule 2002(e) to send a no-asset, no-claims-bar-date version of the Form 9 notice. The version of Form 9 sent out in this case does not set deadlines for filing claims, but rather told creditors:

At this time there appear to be NO AS-SETS available from which payment may be made to unsecured creditors. Do not file a proof of claim until you receive notice to do so.

■ In fact, no-asset, no-bar-date notices are issued in *every* Chapter 7 case filed in the Central District of California. This practice is expressly encouraged by the Administrative Office of the United States Courts to minimize the clerical time devoted to the docketing and filing of claims in no-asset cases. No-asset cases constitute 95% of all Chapter 7 filings nationally. *See* Case Processing Rep., Attachment I. In this district, however, no-asset cases constitute more than 99% of Chapter 7 filings. *Id.* A notice of a claims bar date is sent to Chapter 7 creditors only if a case trustee reports after the § 341(a) examination of the debtor that non-exempt assets may be available to pay creditors' claims. Only in these few asset Chapter 7 cases is a claims bar date ever set—less than 1% of the cases in this district. The result is that the definitive bar date for claims and finality, upon which § 523(a)(3) is premised, simply does not exist in 99% of the Chapter 7 cases in this district.

### B. Consequences of Lack of Proper Notice

In *Beezley,* the Ninth Circuit considered the effect that a no-asset, no-bar-date notice has on the applicability of § 523(a)(3). In that case, the bankruptcy court had refused to reopen the no-asset case on the ground that the debt proposed to be added had been intentionally omitted from the schedules. The Ninth Circuit affirmed the denial as an appropriate exercise of discretion, but it rejected the lower court's reasoning. The Ninth Circuit held that under § 523(a)(3), unscheduled debts are nondischargeable only if the creditor lacked notice of the case in time to file a claim. If a no-asset, no-bar-date notice is issued by the clerk, the time to file a claim never expires. As *Beezley* con-cluded, under such circumstances, unscheduled debts are discharged; § 523(a)(3) never comes into play without a set claims bar date. 994 F.2d at 1434, 1436. Amending the schedules to add claims has no effect upon their discharge status in no-asset, no-bar-date cases: the omitted claims have already been discharged upon the entry of the discharge, along with the other dischargeable prepetition claims. The *per curiam* opinion explained that:

After such a [no-asset, no-bar-date Chapter 7] case has been closed, dischargeability is unaffected by scheduling; amendment of Beezley's schedules would thus have been a pointless exercise.

994 F.2d at 1434. Because an amendment would have no legal effect on whether the claim was discharged, from the Ninth Circuit's perspective, reopening the case to amend would likewise be pointless. The bankruptcy court was thus held to have been correct in denying the motion to reopen, even though it did so for the wrong reason.

The *per curiam* opinion's remarkably brief analysis ignored and implicitly rejected a line of appellate decisions that began with *In re Stark,* 717 F.2d 322 (7th Cir.1983). Following *Stark,* the courts of appeals had consistently held that a court should not discharge a debt under § 523(a)(3) if the debtor's failure to schedule that debt was due to intentional design or fraud, but should permit discharge of debts inadvertently omitted. *See In re Stone,* 10 F.3d 285, 290–91 (5th Cir.1994) (debtor entitled to amend schedules to discharge inadvertently omitted claim); *In re Soult,* 894 F.2d 815, 817 (6th Cir.1990) (case was properly reopened so that omitted claims can be scheduled, because a discharge does not bar subsequent action by an unscheduled creditor without notice of the bankruptcy); *In re Baitcher,* 781 F.2d 1529, 1534 (11th Cir.1986); *In re Rosinski,* 759 F.2d 539, 541 (6th Cir.1985). This approach interprets § 523(a)(3) as implementing the requirement that the debtor schedule all creditors, casting the burden on the debtor to explain any omissions. *See In re Raanan,* 181 B.R. 480 (Bankr.C.D.Cal.1995) (Fenning, J.) (analyzing *Beezley* and *Stark* in detail). *See also* Leif Clark, *Bankruptcy,* 26 Tex.

Tech L.Rev. 357, 358–63 (1995) (analyzing *Stone* and its progeny); Lauren A. Helbling & Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability Under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion Over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 Am.Bankr.L.J. 33, 50–59 (1995).

The *Stark* line of cases places both the burden of going forward and the burden of proof on the debtor, who must bring on the motion and prove inadvertent omission as a condition for reopening and amending the schedules. By contrast, *Beezley* says that it does not matter if a particular debtor's omission of a creditor was motivated by fraud: in the rewrite of the Bankruptcy Code in 1978, Congress intended to sweep *all* debts into the scope of the discharge to protect the fresh start of presumptively innocent—but careless or disorganized—debtors. From this point of view, the debtor does not have to prove that an omitted debt should be discharged; it already has been discharged, like all other prepetition debts, whether scheduled or unscheduled. Rather, the creditor must prove that the omitted debt should not have been discharged. Under the *Beezley* approach, however, the debtor is not obligated to take any steps to rectify the omission, but can raise the discharge as a defense in any subsequent action on a prepetition debt.

 This Court agrees with *Beezley* that the *Stark* line of cases erroneously requires debtors to prove innocent omission as a precondition for including an omitted debt within the scope of the discharge. The Bankruptcy Code provides that the entry of a discharge *automatically* discharges all prepetition debts, except for those excluded from discharge under § 523. To be excepted from the discharge, the burden of proof lies upon a *creditor* claiming fraud or intentional wrongdoing sufficient to meet the standards under § 523(a)(2), (4), or (6). This burden never shifts to the debtor. It remains on the creditor regardless of whether dischargeability is being litigated pursuant to a timely complaint under § 523(c), or pursuant to an action under § 523(a)(3) due to the lack of timely notice for filing such complaints. Thus, the reversal of the lower court decisions in *Beezley* was appropriate. Allegations of a debtor's improper conduct should be evaluated in an appropriate adversary or state court proceeding to determine whether the omitted debt should be excluded from the discharge under § 523(a)(3), not on a motion to reopen.

But *Beezley* is misguided in its dictum about the pointlessness of reopening and amending the schedules. The Bankruptcy Code assigns to the debtor the burden of going forward in identifying the debts to be discharged, the creditors to receive notice, and the assets to be distributed. When a debtor has failed in that duty to schedule all claims and creditors, the clerk's ministerial entry of a discharge and closing of the case should not prevent that debtor from taking reasonable steps to rectify that failure and to clarify the debts covered by the discharge.

*Beezley* is not the Ninth Circuit's only attempt to reconcile the competing principles of the debtor's duty to list all creditors with the broad discharge provisions of the Bankruptcy Code. In *In re Dewalt,* 961 F.2d 848 (9th Cir.1992), the issue was whether the lateness of an unscheduled creditor's nondischargeability complaint was excused by the debtor's failure to file complete and accurate schedules. The omitted creditor had received only seven days' actual notice of the bar date for filing complaints to discharge. The § 523 complaint was filed more than four months after the bar date had passed. Holding that seven days' notice of the bar date was insufficient as a matter of due process, the court concluded that a minimum of thirty days' notice of the bar date for filing complaints was constitutionally required. Similarly, the Bankruptcy Appellate Panel upheld the allowance of a late-filed § 523 complaint in *In re Fauchier,* 71 B.R. 212 (9th Cir. BAP 1987), on the grounds that the Congressional scheme enacted in the Code requires debtors to use "reasonable diligence" in listing creditors at their correct addresses.

Recently, in *In re Santiago,* 175 B.R. 48 (9th Cir. BAP 1994), the Bankruptcy Appellate Panel elaborated upon *Dewalt* in light of *Beezley.* In *Santiago,* an omitted creditor

filed a late complaint to determine the dischargeability of his debt, based on allegations of fraud under § 523(a)(2) and (4). The bankruptcy court dismissed the complaint as untimely under Rule 4007(c), because the creditor had actual knowledge of the bankruptcy case for 19 months before filing the complaint. The Bankruptcy Appellate Panel reversed, holding that an omitted creditor who lacked timely notice of the 60–day deadline for filing dischargeability complaints has the right to file a complaint under § 523(a)(3)(B) at *any* time. Rule 4007(b) provides that:

> A complaint other than under § 523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule.

*Accord, Beezley,* 994 F.2d at 1441 (concurring opinion) ("[B]ecause Beezley failed to schedule the debt, Bankruptcy Rule 4007(b) affords Cal Land the right to litigate dischargeability outside the normal time limits, again in accordance with section 523(a)(3)(B)."); *In re Grant,* 160 B.R. 839 (Bankr.S.D.Cal.1993) (Bowie, J.).

### C. Remedies for the Omitted Creditor Problem

Before *Beezley,* it had been the practice of this Court, along with many of the other bankruptcy judges in this district and elsewhere, to allow reopening cases to file and serve amendments adding omitted creditors. However, other bankruptcy judges in this and other districts had consistently refused to reopen under these circumstances. Reading *Beezley* as a directive to discontinue the practice of reopening to add omitted creditors, this Court complied, with misgivings. The debtor's first motion was among many that were denied based upon *Beezley.*

As the present motion demonstrates, however, reopening the case is *not* a "pointless exercise." Indeed, it may be the only cost-effective relief available to a discharged debtor pursued by an omitted, prepetition creditor.

The state court's action here is understandable in light of the doctrinal confusion created by the bankruptcy courts' failure to distinguish between the debtor's burden of going forward, by listing debts and notifying creditors, and the creditor's burden to prove fraud or other nondischargeability grounds. The present case is only one of many on the Court's recent hearing calendars reflecting the inability of both state and federal district courts to make sense out of the *Beezley* implications. This confusion suggests that the state courts may *not* be the "best" forum to determine whether an unscheduled debt is excepted from the discharge under § 523(a)(3), despite contrary conclusions in other jurisdictions. *E.g., In re Guzman,* 130 B.R. 489, 491 (Bankr.W.D.Tex.1991) (Clark, J.) (denying motion to reopen to add omitted creditors, based in part on conclusion that state court provides best forum for determination of dischargeability). At a minimum, however, the state courts need a simple way to determine whether a particular debt was dealt with in a bankruptcy case.

From the state court's point of view, whether to give preclusive effect to the bankruptcy discharge is really a type of res judicata question. The general rule under California law regarding applicability of res judicata was recently summarized in *Bell v. Shine, Browne & Diamond,* 35 Cal.App.4th 1038, 41 Cal.Rptr.2d 784 (1st Dist.1995), in which the appellate court held that a declaratory relief action seeking attorney fees was barred by a prior Nevada judgment in which claimant had appeared and participated, even though that judgment was based upon claimant's repeated failures to provide information, rather than upon the merits of the claim. The court held that:

> [F]or purposes of applying the doctrine of res judicata, the *opportunity* to litigate an issue may suffice when there has not been *actual* litigation.

*Id.* at 29–30 (Emphasis in original). The *Bell* decision relied heavily upon the analysis of res judicata set forth in *Schultz v. Harney,* 27 Cal.App.4th 1611, 33 Cal.Rptr.2d 276 (Cal. Ct.App.1994), which summarized the law as follows:

> The doctrine of res judicata gives conclusive effect to a final judgment rendered upon the merits by a court having jurisdic-

tion of the cause. (*Goddard v. Security Title Ins. & Guar.* (1939) 14 Cal.2d 47, 51 [92 P.2d 804].) "The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy." (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 811 [122 P.2d 892].) "Restatement Second of Judgments views the doctrine as a bar or merger applicable to subsequent litigation between the same parties concerning the same controversy with very few exceptions. The Restatement's approach is based on the assumption that *there has been an opportunity in the first litigation for a fair and full hearing of the claim asserted.* Once that opportunity has been afforded, the Restatement Second asserts, fairness dictates that the controversy in question be put to rest." (Italics added.) (*Nakash v. Superior Court* (1987) 196 Cal. App.3d 59, 68 [241 Cal.Rptr. 578].)

*Schultz,* 27 Cal.App.4th at 1619–20, 33 Cal. Rptr.2d at 280 (holding that res judicata did *not* apply where the parties in the subsequent proceeding had not been in an adversarial posture in the prior action). The issue is whether the new suit involves the same claim or cause of action that was actually litigated or could have been litigated by the claimant in a prior action between the same parties. *See, e.g., Costantini v. Trans World Airlines,* 681 F.2d 1199 (9th Cir.1982).

Bankruptcy discharges shield a debtor with a special type of res judicata protection. Claims are usually *not* litigated on their merits. Indeed, they are usually not contested at all—except on complaints to determine dischargeability under § 523(a)(3)(B) or § 523(c). Pursuant to § 524(a), the discharge operates as an injunction against any post-discharge enforcement of any discharged claim as a matter of federal law.

When a defense of res judicata is asserted, the previous judgment is ordinarily proven up by introduction of a certified copy of the judgment and whatever pleadings are necessary to establish the issues actually or potentially decided in the prior suit, such as transcripts of hearings in the *Bell* case. *See, e.g., Domestic & Foreign Petroleum Co. v. Long,* 4 Cal.2d 547, 562–63 (1935); CAL.CIV.PROC. CODE § 1908 (West 1975); FED.R.BANKR.P. 9017; FED.CIV.P. 44.

Proving up the scope of a bankruptcy discharge is necessarily different. For res judicata purposes, the bankruptcy judgment is the discharge order. This computer-generated form does not specify the claims covered by the discharge. Rather, the schedules and creditor list are supposed to identify all prepetition claims within the scope of the discharge. As the usual markers for determining the applicability of res judicata are absent, the only available substitutes for identifying adversarial parties and "litigated" claims are the schedules and creditor matrix. Thus, if the debt and the creditor are not scheduled, then the state courts usually conclude, as here, that res judicata does not apply at all. That they are wrong as a theoretical matter is of no comfort to a debtor who faces the prospect of having to litigate a claim that should have been barred by the discharge.

█ As *Beezley* ruled, only omitted creditors holding claims of the type specified in § 523(a)(2), (4), or (6) can potentially escape the § 524 bar. For res judicata to bar their further litigation of their claims, they must have had a fair opportunity to litigate dischargeability. As *Dewalt,* 961 F.2d 848 (9th Cir.1992), and *Santiago,* 175 B.R. 48 (9th Cir. BAP 1994), establish, an omitted creditor without actual notice of the bankruptcy case at least 30 days before the deadline for filing nondischargeability complaints, has the right to file a complaint under § 523(a)(3)(B) at any time. It is only for these categories of claims that one asks the traditional res judicata questions about fair opportunity or actual litigation of the issue of dischargeability.

█ Amendment of schedules to add omitted creditors is not legally required to bring a debt within the scope of the discharge, as *Beezley* ruled. But reopening a Chapter 7 case to allow amendment does not involve much time or effort. And even in a court with the volume of the Central District of California, the requests simply are not so frequent as to create an undue administrative or judicial burden, especially compared

with the complications arising from closing the bankruptcy courthouse doors to that procedure. We have a duty to make our judgments as clear as possible. Bankruptcy courts should simplify—rather than complicate—the job of the state courts and others, such as sheriff's departments and creditors, attempting to evaluate the preclusive effect of a bankruptcy discharge by making it easy for debtors to correct errors and omissions in their schedules. Obviously, it would be better for all amendments to occur before closing. Even with diligence, that is not always possible. Imposing a full new filing fee as the price of reopening a case, however, already provides economic incentive for debtors to take care of amendments before closing.

In effect, a motion to reopen and amend the schedules is the functional equivalent of a motion to correct an error in a judgment. It does not substantively change the ruling; rather it clarifies for third parties the scope and intended effect of that judgment. When the error was the debtor's failure to file accurate schedules, the debtor should be allowed to correct that omission by motion to the bankruptcy court. This procedure is both cost-effective and an appropriate reflection of the respective obligations of debtors and creditors under the Bankruptcy Code.

Permitting reopening and amendment to add omitted creditors does, in fact, serve a salutary bankruptcy purpose. The amendment of the schedules assures that the formerly omitted creditor will receive any future notices relating to the bankruptcy case, in the event (albeit relatively rare) that the no-asset case may be reopened to administer newly-discovered assets. Unless amendment is permitted, the omitted creditor would not receive the notice of possible dividend and claims bar date, which would mean that the omitted debt would not be discharged. *In re McKinnon*, 165 B.R. 55, 57–58 (Bankr.D.Me. 1994) (Haines, J.).

Recently, *In re Franklin*, 179 B.R. 913 (Bankr.E.D.Cal.1995) (Klein, J.), concluded that the debtor's penalty for omitting

creditors is the loss of exclusive federal jurisdiction to determine whether the omitted debt has been discharged. This Court agrees that the state courts have concurrent jurisdiction to make this determination for omitted claims: either the state court or the bankruptcy court has jurisdiction to determine under § 523(a)(3)(B) whether the claim would not have been dischargeable because of its fraudulent or wrongful nature.

Here, however, the creditor has never contended that his claim fell within the § 523(a)(3)(B) exception. There is nothing further to litigate in *any* court. This claim was included within debtor's discharge. Informed of the bankruptcy filing and advised of *Beezley*, the creditor should not have asked the state court to proceed, and that court should not have proceeded to set this matter for trial on the merits.

**CONCLUSION**

Reopening this case is appropriate to allow the debtor to seek an order enforcing the discharge injunction. While the state court has concurrent jurisdiction to determine whether a debt has been discharged, it declined to address the issue. The confusion created by the absence of any reference to this creditor in the schedules can most readily be remedied by further proceedings before this Court. Reopening this case to permit determination of whether this creditor should be liable for a violation of the discharge injunction is appropriate. This opinion constitutes findings of fact and conclusions of law pursuant to Rule 7052. An order consistent herewith will be separately entered.