**In the Matter of Kenneth A. McDANIEL, Debtor.**

**Bankruptcy No. N95–11158–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Jan. 30, 1998.

Timothy D. Roberts, Oliver Maner & Gray, Savannah, Georgia, Patrick Connors DiCarlo, Magill & Bondurant, Atlanta, GA, for Industrial Tractor Company, Inc.

David L. Miller, Atlanta, GA, for Debtor.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Now before the Court in this proceeding is a Motion for Reconsideration filed by Industrial Tractor Company, Inc. (hereinafter "the Creditor"). Through this Motion, the Creditor seeks review of an Order whereby the Court granted the "Motion to Reopen Case and Add Omitted Creditor" filed by Kenneth A. McDaniel (hereinafter "the Debtor"). This Motion gives rise to a core proceeding, *see* 28 U.S.C. § 157(b)(2)(A) & (O), and as such, it shall be disposed of in accordance with the reasoning that follows.

### BACKGROUND

The Debtor commenced his present bankruptcy case by filing a Chapter 7 Petition on May 22, 1995. Since the bankruptcy estate contained no assets beyond the Debtor's ex-

emptions, no bar date was set for filing proofs of claim against the Debtor's estate, as proscribed by Bankruptcy Rule.[1] Apart from this distinguishing characteristic, however, the case proceeded in due course, and on October 16, 1995, the Debtor received a discharge from his prepetition debt obligations. Thereafter, his case was closed.

Throughout the foregoing process, however, the Debtor failed to include as part of his bankruptcy schedules a certain claim owed to the Creditor, which indebtedness arose from the Debtor's status as guarantor of loans made to River Landings, Inc. and KM Trucking, Inc. The Creditor had sent the Debtor no direct notice of its intent to proceed against the guaranty obligation prior to the date of his petition, instead sending correspondence to agents of the corporate obligors in Hilo, Hawaii.[2] Thus, circumstances suggest that the Debtor did not realize his impending liability until the Creditor filed a garnishment on debtor's joint bank account with his wife on or about May 8, 1997.

Upon commencement of such garnishment proceedings, the Debtor filed a Motion to Reopen Case and Add Omitted Creditor. A hearing thereafter was conducted, at which time the Creditor appeared and vigorously contested any amendment of the Debtor's schedules to include that obligation owed to it. Notwithstanding the Creditor's contentions, however, the Court found that the Debtor had a right both in law and in equity to amend his bankruptcy schedules as requested. The Creditor now characterizes that decision as inapposite with the Eleventh Circuit's ruling in *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529 (1986), and thus, seeks reconsideration of its terms.[3]

## I. The Standard for Reconsideration and The Creditor's Failure to Present New Evidence or Case Law Justifying the Relief Sought.

FEDERAL RULE OF CIVIL PROCEDURE 59(e) grants bankruptcy courts license to reconsider orders and judgments after their entry. *See* FED.R.CIV.P. 59(e) (made applicable in bankruptcy by FED.R.BANKR.P. 9023); *see also* FED.R.BANKR.P. 9002 (references, like that of FEDERAL RULE OF CIVIL PROCEDURE 59(e), to the alteration or amendment of a "judgment" shall be read to include reconsideration of any order appealable to an appellate court); *see also NationsBank v. Blier (In re Creative Goldsmiths)*, 178 B.R. 87, 90–91 (Bankr. D.Md.1995) (applying Rule 59(e) in bankruptcy). Understandably, however, the goal of this provision is limited to the correction of any manifest errors of law or misapprehension of fact. *See Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993); *Lux v. Spotswood Constr. Loans*, 176 B.R. 416, 420 (E.D.Va.), aff'd, 43 F.3d 1467 (4th Cir.1994). "[This Rule is] not designed to furnish a vehicle by which a disappointed party may reargue matters already argued and disposed of, nor [is it] aimed at providing a mechanism by which new arguments or legal theories, which could and should have been raised

---

1. Regarding the time limits for filing a proof of claim, the Bankruptcy Rules provide:

   (a) NECESSITY FOR FILING—An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005.
   * * *
   (c) TIME FOR FILING—In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under section 341(a) of the Code, except as follows:
   (5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.
   *See* FED.R.BANKR.P. 3002(e)(5).

2. All bills were sent to Danny McDaniel, the President and Chairman of the Board of both corporations, in Hilo, Hawaii. According to the Debtor, Mr. McDaniel did not advise him of the Creditor's impending plans to recover from him as guarantor.

   Furthermore, while the Creditor avers to have made personal service upon the Debtor in a suit against the guaranty, no return of service has been submitted into evidence to substantiate this fact, and the default judgment produced by the action inferentially supports the Debtor's contention that he had no knowledge of the action's pendency.

3. This argument appears indistinguishable from that which the creditor made in the course of the Court's original hearing of July 25, 1997.

prior to the issuance of judgment, can be later advanced." *See In re DEF Inv., Inc.,* 186 B.R. 671, 680–81 (Bankr.D.Minn.1995) (citing *Bannister v. Armontrout,* 4 F.3d 1434, 1440 (8th Cir.1993)); *see also Concordia College Corp. v. W.R. Grace,* 999 F.2d 326, 330 (8th Cir.1993), *cert. denied,* 510 U.S. 1093, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994); *Fed. Deposit Ins. Corp. v. World Univ., Inc.,* 978 F.2d 10, 16 (1st Cir.1992); *Dale & Selby Superette & Deli v. Dep't of Agric.,* 838 F.Supp. 1346, 1348 (D.Minn.1993); *DeGidio v. Pung,* 125 F.R.D. 503, 505 (D.Minn.1989). Attempts to take a "second bite at the apple," to introduce new legal theories, or to pad the record for an appeal, constitute an abuse of the Rule 59(e) motion which the Court normally will not condone. *See id.* Thus, the Court will grant a Rule 59(e) motion only under extraordinary circumstances, such as a change in the law or the facts upon which it based its decision. *See Wilson v. Runyon,* 981 F.2d 987, 989 (8th Cir.1992), *cert. denied,* 508 U.S. 975, 113 S.Ct. 2968, 125 L.Ed.2d 668 (1993); *Dale & Selby,* 838 F.Supp. at 1347–48.

■ In the instant case, the Creditor has not produced any previously unavailable case law or evidence which might warrant reconsideration from the Court.[4] Rather, having failed in opposing the Debtor's efforts at schedule amendment to begin with, the Creditor appears to call upon Rule 59(e) as a vehicle for rehashing those same contentions.[5] Rule 59(e), however, is not to be used for the advancement of arguments that should and could have been made prior to an Order's entry. *Concordia College Corp. v. W.R. Grace & Co.,* 999 F.2d 326, 330 (8th Cir.1993) (litigants may "not use a Rule 59(e)

motion to introduce new evidence that could have been adduced [earlier, or] as the occasion to tender new legal theories for the first time"); *California Union Ins. Co. v. Liberty Mutual Ins. Co.,* 930 F.Supp. 317, 317–18 (N.D.Ill.1996); *DeWit v. Firstar Corp.,* 904 F.Supp. 1476, 1495 (N.D.Iowa 1995). The Court's decisions are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Lester v. Brown,* 1995 WL 447764, No. 93–C–7481 at *1 (N.D.Ill. July 26, 1995). Nor should Rule 59(e) be viewed as a means for overcoming one's failure to litigate matters fully. *All West Pet Supply Co. v. Hill's Pet Prods. Div., Colgate–Palmolive Co.,* 847 F.Supp. 858, 860 (D.Kan.1994) ("[a] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend"); *Yorke v. Citibank; N.A. (In re BNT Terminals, Inc.),* 125 B.R. 963, 977 (Bankr.N.D.Ill. 1990) (second bites are not the function of Rule 59(e)). To the extent that it harbors such an effort, calculated from hindsight without the benefit of any new case law or evidence that could not have been presented earlier, the Creditor's Motion for Reconsideration falls outside the permissible scope of a Rule 59(e) Motion, and it must be denied as such.

## II. The Standards for Reopening No–Asset Cases for the Purpose of Schedule Amendment, As Defined By Code Sections 350(b) and 523(a)(3).

### A. Sections 350(b) and 523(a)(3) in Overview.

■ To the extent, however, that the Creditor's present Motion reflects a misun-

4. Acting on the assumption that the Creditor might have some basis of newly discovered evidence upon which to found its Motion, the Court agreed to schedule an evidentiary hearing for the consideration of those issues. Rather than adducing previously undiscoverable matters, however, the Creditor simply re-presented those arguments and evidentiary contentions which had been made by it at the original hearing. As such, in weighing the matters before it, the Court must conclude that the Creditor's Motion for Reconsideration lacks the support of any evidence sufficient to warrant reconsideration. *Cf Russ v. Int'l Paper Co.,* 943 F.2d 589, 593 (5th Cir.1991) (citing *DeLong Corp. v. Raymond Int'l,, Inc.,* 622 F.2d 1135 (3d Cir.1980) (parties may not justify

reconsideration merely through the submission of previously available evidence)).

5. The Debtor, of course, bore the initial burden of establishing the propriety of reopening this bankruptcy case to add the Creditor's claim to his schedules. *See infra,* notes 6–9 and accompanying text. This burden, however, should not be confused with the Creditor's present obligation as movant for reconsideration to produce some cognizable basis for the relief that its seeks. *See generally* 11 CHARLES A. WRIGHT & ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (1995) (discussing the burden that a rule 59(e) movant must carry and the various showings which might warrant reconsideration).

derstanding of its prior ruling, the Court shall herein memorandize the principles of law behind that decision in substantial detail. 11 U.S.C. § 350(b) permits a bankruptcy case to be reopened "to administer assets, to accord relief to the debtor, or for other cause." *See generally* FED.R.BANKR.P. 5010 ("[a] case may be reopened on motion of the debtor or other party in interest pursuant to section 350(b) of the Code."). By its reference to "cause," section 350(b) casts a broad net, and a decision in this respect thus necessarily falls within the "sound discretion of a bankruptcy court." *See In re Sheerin,* 21 B.R. 438, 439–40 (1st Cir. BAP 1982); *see also In re Figlio,* 193 B.R. 420, 424 (Bankr. D.N.J.1996) ("[t]he decision to reopen the case is within the broad discretion of the bankruptcy court"); *In re Winebrenner,* 170 B.R. 878, 881 (Bankr.E.D.Va.1994) (quoting *In re Carter,* 156 B.R. 768, 770 (Bankr. E.D.Va.1993) ("[t]he right to reopen the case depends upon the circumstances of the individual case and the decision whether to reopen is committed to the court's discretion")).

■ Generally speaking, a debtor's desire to amend his bankruptcy schedules "to include an additional creditor and, thus, accurately reflect all debts owed ... constitutes sufficient cause to reopen." *See In re Jensen,* 46 B.R. 578, 581 (Bankr.E.D.N.Y.1985); *accord In re Daniels,* 51 B.R. 142, 143 (Bankr.S.D.Ohio 1985) ("[a] classic cause for invoking the cure of reopening is to add an omitted creditor to the schedules"); *see also In re Godley,* 62 B.R. 258, 261–62 n. 1 (Bankr.E.D.Va.1986) (noting that such cause exists because "[t]he Bankruptcy Code places a premium on scheduling all creditors"). Indeed, in the vast majority of cases, it is a debtor's wish to discharge the omitted debt which forms the impetus behind his Motion to Reopen. Notwithstanding such self-interest, however, this motive shall be validated

by the Court's approving the Motion to Reopen, absent some harm or prejudice to the omitted creditor. *See, e.g., In re Candelaria,* 121 B.R. 140, 142 (E.D.N.Y.1990); *Matter of Davidson,* 36 B.R. 539, 543 (Bankr.D.N.J. 1983). "Harm or prejudice" arises when Creditor's omission from bankruptcy schedules has precluded it from participating in the case's distribution, or made it unable to challenge the dischargeability of the debtor's obligation to it.

So as to guard against these dual prejudices to the rights of omitted creditors, Bankruptcy Code section 523(a)(3) makes the following provision: [6]

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> * * *
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;
>
> * * *

---

**6.** Significantly, prior to adoption of the modern Code, relevant bankruptcy law provided for the per se nondischargeability of any unscheduled claim, the holder of which had no knowledge of the bankruptcy case—

> A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... have not been duly scheduled in time for proof and allowance, with the name of the creditor,

if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy.

Section 17a(3), Bankruptcy Act, codified at 11 U.S.C. § 350(a)(3) (repealed by the Bankruptcy Reform Act of 1978); *see also Birkett v. Columbia Bank,* 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904); *In re Adams,* 734 F.2d 1094, 1098 (5th Cir.1984).

11 U.S.C. § 523(a)(3). By virtue of this section, a debtor's motion to reopen, and thereby, to obtain a discharge from previously unscheduled debts substantially is defeated in two circumstances.[7] First, if the debt is one which otherwise would be excepted from discharge under sections 523(a)(2), (4), or (6), but upon which the Creditor could not obtain a timely determination of nondischargeability by virtue of her lack of notice or actual knowledge of the case,[8] section 523(a)(3) precludes the Debtor from capitalizing on that inequity. *See* 11 U.S.C. § 523(a)(3)(B). Second, as to all other debts, the Debtor may not amend his schedules and obtain a discharge from an obligation upon which the creditor's lack of notice or actual knowledge prevented the timely filing of a proof of claim[9] and consequent participation in distribution. *See* 11 U.S.C. § 523(a)(3)(A); *see also In re Shaheen*, 174 B.R. 424 (E.D.Va. 1994); *Matter of Johnson*, 208 B.R. 746 (Bankr.S.D.Ga.1996); *In re Hicks*, 184 B.R. 954 (Bankr.C.D.Cal.1995).

### B. Application of Section 523(a)(3)(A) in the Context of No–Asset Cases.

Since, in the context of debts not subject to section 523(a)(2), (4), (6), all adverse consequences of non-scheduling hinge upon a creditor's lost opportunity to "timely file a proof of claim," application of section 523(a)(3)(A) becomes quite complicated in no-asset liquidation cases. Specifically, in such cases, no deadline for filing proofs of claim ever arises, and as such, it never can be said that an unscheduled creditor of a case with no assets was prevented from "timely filing" proof of

---

**7.** As one pair of commentators recently summarized the effect of these provisions:

> In other words, section 523(a)(3) divides all omitted prepetition debts into three categories. First, under section 523(a)(3)(A) there are omitted debts that are nondischargeable solely because of the omission. Second, under section 523(a)(3)(B) there are omitted debts that would be discharged unless a creditor establishes, in a timely filed action, that a particular debt was incurred by nondischargeable fraud, embezzlement, larceny, breach of fiduciary duty, or willful and malicious conduct under section 523(a)(2), (4), or (6). Finally, by implication, there are debts that fit into some other category of nondischargeable debt (e.g. alimony and child support), which are always nondischargeable regardless of whether they are omitted.
>
> Stated alternatively, if an otherwise dischargeable omitted debt meets the rather specific requirements of section 523(a)(3)(A), then it is not discharged. But, if such a garden variety omitted debt does not so qualify, then it is discharged because no other provision of the Code makes a debt nondischargeable merely because it is omitted. Otherwise nondischargeable debts fall into two categories. Omitted debts that would be nondischargeable on account of fraud, embezzlement, larceny, breach of fiduciary duty, or willful and malicious conduct are discharged if the creditor has notice or actual knowledge of the bankruptcy case in time to file a timely proof of claim and in time to bring a timely nondischargeability action under section 523(a)(2), (4), or (6) and does not do so. All other nondischargeable debts remain nondischargeable.

*See* Lauren A. Helbling & Christopher M. Klein, *The Emerging Harmless Innocent Omission Defense To Nondischargeability Under Bankruptcy*

*Code Section 523(a)(3)(A): Making Sense Of The Confusion Over Reopening Of Cases And Amending Schedules To Add Omitted Debts*, 69 Am.Bankr. L.J. 33, 39–40 (Winter, 1995) (footnote omitted).

**8.** The Bankruptcy Code and Rules clearly provide that debts of the kind specified in paragraphs (2), (4), (6), and (15) of section 523(a) will be discharged unless the creditor timely initiates an action to determine the dischargeability of the debt. *See* 11 U.S.C. § 523(c)(1); Fed.R.Bankr.P. 4007(c). Ordinarily, a timely complaint to determine dischargeability of a debt of the kind specified in paragraphs (2), (4), (6), and (15) of section 523(a) must be filed within sixty (60) days following the first date set for the meeting of creditors. *See* Fed.R.Bankr.P. 4007(c); *see also In re Benedict*, 90 F.3d 50 (2d Cir.1996); *In re Marino*, 37 F.3d 1354 (9th Cir.1994); *In re Toler*, 999 F.2d 140 (6th Cir.1993). Dischargeability complaints which are not dependent upon these particular subsections may be filed at any time. *See* Fed. R.Bankr.P. 4007(b) ("[a] complaint other than under section 523(c) may be filed at any time"); *see also In re McKendry*, 40 F.3d 331 (10th Cir. 1994); *Matter of Stone*, 10 F.3d 285 (5th Cir. 1994); *US. v. Wood*, 925 F.2d 1580 (7th Cir. 1991).

**9.** Subject to limited exceptions, the Bankruptcy Rules provide that "[i]n a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code." *See* Fed.R.Bankr.P. 3002(c). Those proofs of claim not timely filed are subject to disallowance. *See* 11 U.S.C. § 502(b)(9).

its interest,[10] as contemplated by section 523(a)(3)(A). *Beezley v. Calif. Land Title Co. (In re Beezley),* 994 F.2d 1433 (9th Cir.1993); *In re Gardner,* 194 B.R. 576, 578 (Bankr. D.S.C.1996); *In re Cates,* 183 B.R. 723, 725–26 (Bankr.M.D.N.C.1995); *In re Carberry,* 186 B.R. 401, 403 (Bankr.E.D.Va.1995); *In re Woolard,* 190 B.R. 70, 73–74 (Bankr.E.D.Va. 1995); *In re Stecklow,* 144 B.R. 314, 315–17 (Bankr.D.Md.1992). In other words, the terms of section 523(a)(3) *a fortiori* do not apply to no-asset cases.[11] *Id.*

Most recently, the Third Circuit underscored the validity of such considerations in *Judd v. Wolfe,* 78 F.3d 110, 114 (1996). There, the debtor and creditor were divorced prior to filing, with the debtor taking responsibility for the marital home under the terms of their Settlement Agreement. *Id* at 112. The debtor thereafter filed a Chapter 7 petition in bankruptcy, wherein she listed the residence's mortgagee as a creditor, but failed to scheduled the creditor as holder of a potential claim for indemnification. *Id.* Since there were no assets in the liquidation case, no deadline for filing claims was set, in accordance with Bankruptcy Rule 2002(e); rather, creditors were notified that it would be un-

necessary to file claims in view of the lack of distributable assets. *Id.* Ultimately, the trustee abandoned his interest in the marital home, the debtor received a discharge, and the case was closed. *Id.*

In March, 1994, after the debtor's bankruptcy case was closed, the first mortgagee, Mortgage Access Corporation, filed a complaint in foreclosure listing both the debtor and the creditor as defendants. Subsequently, the creditor sought indemnification from the debtor pursuant to their property settlement, and on August 15, 1994, the debtor filed a motion to reopen her Chapter 7 proceedings so that she could list the creditor and discharge her obligation to him. *Id.*

Noting that no claims bar date had ever been set for the case, the *Judd* panel concluded that not having been scheduled, the creditor could not have been prevented from "timely filing" a proof of claim. *Id.* at 114–15. Thus, since the unlisted debt was not an intentional tort debt to which section 523(a)(B) might apply, reopening of the case was deemed unnecessary to discharge the obligation at issue. *Id.* at 115 (citing *In re Thibodeau,* 136 B.R. 7 (Bankr.D.Mass.1992);

---

**10.** In an exception to its requirement that a proof of claim be filed not later than 90 days after the section 341 meeting of creditors, Rule 3002 directs that no such deadline will apply—

> If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

See FED.R.BANKR.P. 3002(c)(5); *see also* FED.R.BANKR.P. 2002(e) ("if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement ... that it is unnecessary to file claims ... and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims"). Regarding the impact of these provisions, one court has pointedly observed,

> The long and the short of it is this: Section 727 provides for the discharge of prepetition obligations (scheduled or not), and references the exceptions to discharge listed in section 523(a). Among section 523(a)'s exceptions, only section 523(a)(3) addresses the relation of scheduling to discharge. Section 523(a)(3)(A) ... excepts from discharge debts that are not scheduled in time to permit the timely filing of

> a proof of claim (unless the creditor had notice or actual knowledge of the case). In a no-asset Chapter 7 case in which the Rule 2002(e) notice has issued, no time limit for filing proofs of claim is ever established.

*In re McKinnon,* 165 B.R. 55, 56–57 n. 7 (Bankr. D.Me.1994).

**11.** In view of this reality, several courts have noted that, unless a debt possibly falls within section 523(a)(2), (4), or (6), reopening a no-asset case to schedule that claim serves little purpose, for such a debt will stand presumptively discharged by operation of Code section 727. *See* 11 U.S.C. § 727 ("[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief ... whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title"); *see also In re Gardner,* 194 B.R. 576 (Bankr.D.S.C.1996) (reopening would not accord relief sought by debtor); *In re Carberry,* 186 B.R. 401 (Bankr.E.D.Va.1995)(reopening to add omitted creditor would be futile and a waste of judicial resources); *In re Cates,* 183 B.R. 723 (Bankr.M.D.N.C.1995) (reopening case to amend schedules was futile); *In re Stecklow,* 144 B.R. 314 (Bankr.D.Md.1992) (no additional relief would be accorded to debtors by adding unscheduled creditors in a no-asset case).

*In re Peacock*, 139 B.R. 421 (Bankr. E.D.Mich.1992); *In re Guzman*, 130 B.R. 489 (Bankr.W.D.Tex.1991)) (scheduling or not scheduling a creditor has no impact on whether the creditor's claim is discharged; section 727 extends discharge to all prepetition debts and applies without regard to whether the debt is listed in the schedules); *In re Mendiola*, 99 B.R. 864, 865 (Bankr. N.D.Ill.1989) (reopening the case to amend schedules would not affect the rights or liabilities of the parties, but would be an exercise in futility); *In re Karamitsos*, 88 B.R. 122 (Bankr.S.D.Tex.1988) (the filing of an amended creditor schedule after discharge has been granted in a no-asset Chapter 7 case has absolutely no effect on the dischargeability of the debt); *In re Anderson*, 72 B.R. 495 (Bankr.D.Minn.1987) (holding similarly).

### C. Impact of the Eleventh Circuit's Baitcher Holding on Section 523(a)(3)'s Application.

Notwithstanding arguments by the Creditor to the contrary, the foregoing line of precedent may easily be reconciled with the Eleventh Circuit's holding in *Samuel v. Baitcher (In re Baitcher)*, 781 F.2d 1529

**12.** In *Baitcher*, the debtor and her husband owned and controlled an Atlanta restaurant, The Flame, Inc. When the business became unable to pay its debts, the Debtor, as corporate secretary, executed and filed a voluntary bankruptcy petition for the business. Although the corporate debtor in possession thereafter was displaced by the appointment of a receivership, the Debtor continued to work on the premises for long hours and made many managerial decisions. Neither she nor the receivers renewed the workmen's compensation insurance required by Georgia law, and while it was in lapse, a waiter, appellant Samuel, suffered a fall with resultant injury. The State Compensation Board made an award to Samuel, to be paid by the employer plus a penalty, as state law required, if it had failed to obtain proper coverage, but the bankruptcy prevented recovery from that source. In 1976 Samuel sued both Baitchers, personally, for the award and penalty. In the midst of litigation over the employee's claims against her, the Debtor obtained an individual discharge in bankruptcy without listing Samuel as one of her creditors. *See id.* at 1530.

**13.** Of course, "[n]othing in section 523(a)(3) refers to the debtor's state of mind." *In re Karras*, 165 B.R. 636 (N.D.Ill.1994); *see also Judd*, 78 F.3d at 116 (quoting *Beezley*, 994 F.2d at 1439)

(1986). In *Baitcher*, the Court found itself faced with a debtor who had omitted the claim of her injured employee, despite being an active participant in the litigation over that debt at the time of filing.[12] Noting that the involved case was one of no assets, and as such the debtor might have a statutory right to discharge under section 523(a)(3)(A), the *Baitcher* panel nonetheless concluded that equity would compel a different outcome, if evidence demonstrated that the creditor's omission had arisen from intentional design or fraud on the debtor's part. *Id.* at 1533 (quoting *In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir.1985) ("[i]t is well accepted that the bankruptcy court is guided by the principles of equity, and that the court will act to assure that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done")) (internal quotations omitted).

This holding, of course, found its roots in basic principles of equity, and not in any specific language of the Bankruptcy Code.[13] Indeed, in enunciating its terms, the Eleventh Circuit fashioned a rule speaking to those concerns to which section 523(a)(3) does not extend,[14] i.e., while sections

("[n]owhere in section 523(a)(3) is the reason why a debt was omitted from the bankruptcy schedules made relevant to the discharge of that debt"). In the *Baitcher* court's estimation, however, strictly applying section 523(a)(3)(A)'s terms would have produced an "inequitable position" in the case before it. *See Baitcher*, 781 F.2d at 1533.

**14.** As an aside, however, one well might question the necessity of *Baitcher's* fraud-related proscription. While neither subsection (a)(3) nor any other provision of section 523(a)(3) declares nondischargeable a debt which the debtor failed to list by subterfuge, to the extent that such conduct did in fact arise from intentional design or fraud, the Bankruptcy Code specifically mandates a revocation of the debtor's entire discharge. *See* 11 U.S.C. § 727(d)(1) ("the court shall revoke a discharge granted under subsection (a) of this section if ... such discharge was obtained by fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge"). As such, the debt-specific measures espoused in *Baitcher* would appear to serve little purpose.

*Baitcher* does add one significant feature to the calculus of discharge and dischargeability, how-

523(a)(3)(A) and (B) merely seek to remedy various prejudices befalling unscheduled creditors, the *Baitcher* doctrine insures that no fraud shall be committed upon the Court, even in the absence of creditor prejudice. Thus, in mandating the nondischargeability of debts unscheduled by fraud or intentional design, *Baitcher* effectively poses a judicially created supplement to the rule of section 523(a)(3).[15]

## II. Application to the Instant Case.

■ As noted in the October 24th and July 25th hearings on these matters, this Court finds the reasoning of *Judd* decision and its progeny directly to govern the instant case. No suggestion has been raised that the debts at issue come within the terms of Bankruptcy Code sections 523(a)(2), (4) or (6), and as

such, section 523(a)(3)(B) presents no bar to the Debtor's amending his schedules as requested. Furthermore, to the extent that an assetless liquidation case is involved, the lack of any claims bar date in these proceedings makes Code section 523(a)(3)(A) likewise inapplicable. In short, the claim's having heretofore been unscheduled will have no impact upon its susceptibility to discharge.

■ Likewise, the Court finds nothing in the circumstances of this case which would warrant invocation of *Baitcher's* equitable rule of nondischargeability. The Debtor's explanation of his failure to list this debt seems wholly believable, and the evidence clearly suggests an innocent mistake on his part.[16] Moreover, the Creditor has produced no evidence undercutting this suggestion of mere inadvertence by the Debtor.[17] As a

---

ever. As the Eleventh Circuit noted in its opinion, debtors seeking to reopen a no-asset case and amend their schedules must independently prove the absence of any intentional design or fraudulent omission on their part. In this aspect of its ruling, *Baitcher* deviates significantly from the Code's general approach to discharge challenges, and particularly, the allocation of the burden in discharge revocation actions under section 727(d). Indeed, to the extent that it saddles debtors with such a burden of proving a negative, the *Baitcher* opinion has been subjected to criticism for undermining fundamental bankruptcy policies. *See, e.g., In re Hicks*, 184 B.R. 954 (Bankr.C.D.Cal.1995) (submitting that the burden never should be placed upon the debtor in such a fashion); *see also In re Bulbin*, 122 B.R. 161 (Bkrtcy.D.Dist.Colo.1990) (criticizing the *Baitcher* holding for, *inter alia*, "disregarding the plain language of section 523(a)(2)(A) and enlarg[ing] it to create a new exception to dischargeability that Congress simply has not seen fit to enact").

15. In specific terms, the *Baitcher* court framed its decision as one of denying the debtor leave to amend her schedules, based upon a presumption that scheduling was necessary for the debt's discharge. By default, however, the Code declares both scheduled and unscheduled debts discharged, subject only to section 523. *See* 11 U.S.C. § 727(b) ("[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this

title"). For this reason, the *Baitcher* court's intention of deeming nondischargeable those debts omitted from schedules through fraud can best be served by construing that holding to erect a new, uncodified provision for nondischargeability.

16. As previously noted, the Creditor had sent no direct notice to the Debtor of its intent to proceed against the guaranty obligation prior to the date of his petition, instead sending correspondence to agents of the corporate obligors in Hilo, Hawaii. According to the Debtor, those corporate officials did not advise him of the Creditor's impending plans to recover from him as guarantor.

Furthermore, while the Creditor avers to have made personal service upon the Debtor in a suit against the guaranty, no return of service has been submitted into evidence to substantiate this fact, and the default judgment produced by the action inferentially supports the Debtor's contention that he had no knowledge of the action's pendency. Thus, circumstances suggest that the Debtor did not realize his impending liability until the Creditor filed a garnishment on debtor's joint bank account with his wife on or about May 8, 1997.

17. Indeed, circumstances suggest just to the contrary, in that the Creditor did not commence its suit upon the guaranty until *after* instant bankruptcy case had been filed. Had the debtor been aware of this patent violation of bankruptcy's automatic stay, he no doubt would have sought an Order enjoining the Creditor's actions against him and requested sanctions. *Cf* 11 U.S.C. § 362(a) & (h) (enjoining any and all actions by creditor's against property of the estate and providing for sanctions against any creditor who willfully violates that mandate).

consequence, the Court can only conclude that the Debtor's failure to list his obligation to the Creditor did not arise from fraud or intentional design, such that the debt should be declared nondischargeable under the reasoning of *Baitcher*.

### CONCLUSION

This matter having come before the Court on the Motion for Reconsideration filed by Industrial Tractor Company, Inc., and the Court having found no justification for the relief sought therein, it hereby is **OR-DERED** that the foregoing Motion is **DENIED**.

**IT IS SO ORDERED.**